KNOX, ATTY.-GEN. *v.* L. N. DANTZLER LUMBER CO.*

(Division B.    Nov. 28, 1927.    Suggestion of Error Overruled Jan. 9,
1928.)

[114 So. 873.    No. 26640.]

1. TAXATION. *Appeal to circuit court by attorney-general from assess-
ment of taxes by board of supervisors is tried de novo; on ap-
peal by attorney-general from assessment of taxes, circuit court
may try issue and render such judgment as board of supervisors
should have rendered in equalizing taxes (Hemingway's Code
1927, section 61).*

Under section 61, Hemingway's Code 1927 (Laws 1918, chapter
120), an appeal from an assessment of taxes by the attorney-gen-
eral is tried *de novo,* and the circuit court may try such issue,
and render such judgment as the board of supervisors should
have exercised at the hearing before it in equalizing taxes.

2. TAXATION. *On appeal from judgment of board of supervisors as to
taxes, circuit court has same power as board (Hemingway's Code
1927, section 8227).*

Under section 8227, Hemingway's Code 1927 (section 4305, Code of
1906), the board of supervisors at the meeting for the hearing
of objections to assessments not only hears and determines all
objections that are filed, but carefully examines the roll or rolls
and causes to be assessed any person or thing that may be found
to have been omitted; and anything found to have been un-
dervalued may be correctly valued by it. On appeal from their

judgment, the circuit court is vested with the same power
that the board. has; the trial being *de novo.*

3. Taxation. *Tax assessment on corporations and joint-stock com-
panies, not made by assessors and board of supervisors, may be
made by circuit court on appeal (Hemingway's Code 1927, section
6901).*

Under section 4267, Code of 1906 (section 6901, Hemingway's Code
1917), it is the duty of corporations and joint-stock companies
doing business in the state to make a written statement, under
oath, to the assessor, of the capital stock of the corporation or
company paid in, and of its market value, and to whom each
share belongs, and also a statement of the market value of all
real estate owned by such company or corporation as of the 1st
day of February of the year for such taxation, and it is the duty
of the taxing authorities to tax it, not only upon its physical
property, but upon the value of the physical property plus the in-
crease, if any, above such value, shown by the value of the capital
stock, and, where such assessment is not made by the assessor
and board of supervisors it may be made by the circuit court on
appeal taken by the attorney-general.

4. Taxation. *Legislature may authorize circuit court on appeal from
tax board of equalization to try case anew (Constitution 1890,
section 156).*

Under section 156 of the state Constitution of 1890, the legislature
is empowered to confer such appellate jurisdiction as shall be
prescribed by law upon the circuit court, and the legislature
may authorize the circuit court on appeal from the taxing board
of equalization, the power to try the case anew. On such appeal
the circuit court is vested with the same powers as the equaliza-
tion board has with reference to such assessment.

5. Taxation. *On appeal from assessment of taxes, circuit court may
require production and inspection of books and papers showing
property's value; where evidence shows taxpayer has books and
papers showing value of property, circuit court, on appeal from
tax assessment, should order their production (Hemingway's
Code 1927, section 759).*

Under section 759, Hemingway's Code 1927 (section 1003, Code of
1906), the circuit court, on appeal from an assessment of taxes
against a corporation, prosecuted by the attorney-general or other
officer representing the state or county, may require the produc-
tion and inspection of such books and papers as will furnish
evidence of the property owned by the person or corporation
taxed, and the true value thereof; and, where the evidence taken

on motion for such purpose shows that such person or corpo-
ration has such books,..papers, and. documents as will show the
property of the person or corporation being assessed, the court
should order the production and inspection of such books, papers,
etc., and such production and inspection does not violate the
constitutional provisions against unreasonable search and seizure.

*Corpus Juris-Cyc. References: Searches and Seizures, 35Cyc, p. 1272,
n. 66; Taxation, 37Cyc, p. 814, n. 43; p. 818, n. 63·; p. 1114, n. 82; p.
1117, n. 5; p. 1119, n. 11, 14; p. 1120,·n. 18.

APPEAL from circuit court of Jackson county.

HON. W. A. WHITE, Judge.

From a personal tax assessment on the L. N. Dantz-
ler Lumber Company by the board of supervisors of
Jackson county, Rush H. Knox, attorney-general, on be-
half of the state, Jackson county, and various taxing dis-
tricts thereof, appealed to the circuit court and asked
for a writ of *subpoena duces tecum.* From an adverse
judgment, the attorney-general appeals. Reversed and
remanded.

*E. C. Sharp* and *Rufus Creekmore,* for appellant.

The instruction given is not the law but on the trial
of the case before the circuit court on appeal thereto
from the board of supervisors the court has the authority
and it is its duty to hear testimony not only as to the
value of items placed on the roll and valued by the board
while equalizing the roll, but also to place thereon any
items of property in the county which are subject to tax-
ation, but which either purposely or inadvertently had
been omitted from the roll by the assessors or by the
board. See section 2; chapter 323, Laws of 1920; sec.
6898, Hemingway's Code, provides that the assessors
shall annually assess the polls and all property subject
to taxation in their respective counties.

Section 6901, Hemingway's Code, was construed by
our court in: *Panola County* v. *Carrier and Son,* 89 Miss.

277, 42 So. 347; and *Barnes* v. *Jones,* 239 Miss. 675, 103 So. 773, which cases held that the statute as written was incomplete and that in making the assessment of the capital stock there should be deducted, in addition to the aggregate value of the real estate owned by the company, the aggregate value of the tangible personal property owned by the company and subject to taxation; Sec. 6939, Hemingway's Code; Sec. 6, chapter 323, Laws of 1920.

From a reading of these statutes, it will clearly be seen that it was the duty of the Dantzler Lumber Company to return, under oath, a written statement showing the amount of capital stock of said company together with its market value and the name of each stockholder. When the board of supervisors met for the purpose of equalizing the rolls and for hearing objections thereto, it then became the duty of the board to deduct from the value of the capital stock of the corporation the aggregate value of the real and personal property owned by it, and to assess the balance to the company. If the corporation failed to comply with the law in making its return, or if the assessor failed to perform his duty, by requesting said corporation to make said sworn return, and in assessing it the board of supervisors then had the authority, and it clearly became its duty to assess to the corporation the value of said capital stock as property "which was found to have been omitted from the roll." To deny to the board this power would be to deny to it one of its powers which was specifically conferred on it by the very provisions of the statute itself.

If we are correct in this position, and, candidly we cannot see how it can be successfully controverted, then there is no escape from the conclusion that the board of supervisors acts not only as an equalizing board, but, under certain circumstances, also performs the function of an assessor. In the case at bar, the attorney-general did not appear before the board of supervisors and file written objections to the valuation placed on the various

items of property assessed by the board, nor did he file written objections to the action of the board in failing to assess to the defendant lumber company, as omitted property, the value of its capital stock. These written objections were not filed by him because of the fact that he was not required so to do in order to take an appeal and to have a trial of the case anew in the circuit court. *Robinson Land & Lumber Company* v. *Roberson,* 126 Miss. 535.

Chapter 120, Laws of 1918, provides the method for appealing from the decision of the board of supervisors in the matter of assessment of taxes. It is there provided, among other things, that "the controversy shall be tried anew in the circuit court at the first term."

The correctness or incorrectness of the ruling of the court on this point depends, as we see it, on the construction of the language of the statute providing that the controversy shall be tried anew in the circuit court. If by trial anew it is meant that the circuit court could and should inquire into the same things that the board of supervisors, when hearing objections to the roll and equalizing the same could have heard and inquired into, then it is clear that the circuit court had the power and should have admitted testimony relative to those items which should properly be assessed and taxed, but which, for some reason, were omitted from the roll. On the other hand, if a trial anew means only that those matters can be inquired into which appear on the roll itself, then the decision of the trial court is sound and should be sustained.

In the case at bar, the circuit judge by his rulings has, in effect, defined the issue in the case as being solely a question of the valuation of the particular items assessed by the board and actually appearing on the assessment roll. By what authority he has thus defined the issues in the case, we cannot comprehend. If the attorney-general had appeared before the board, as he had the right to do, and had there filed written objections to the

action of the board in failing to assess the capital stock of the defendant lumber company, it certainly could not be contended that one of the issues on appeal to the circuit court was not whether or not property which should have been assessed had been omitted from the roll. So likewise, the attorney-general, had he so desired, could have appeared before the board of supervisors and filed written objections to the action of the board in assessing certain items at a certain value, and, on appeal to the circuit court, this would also be one of the issues to be tried and determined there. If the attorney-general is not required to do this, and the cases have held that he is not, then the logical conclusion is that any objection that might have been made before the board may likewise be made in the circuit court where the case is tried anew.

The question of what is a trial *de novo* is not new to this court. In *Callahab* v. *Newell,* 61 Miss. 437, the court had before it for decision the interpretation of the statute which provides that appeals from judgments of the courts of the justice of the peace are to be tried anew in the circuit court. The court there held that in trial *de novo,* the case was to be tried as if never tried before and that any defense may be set up for the first time in the circuit court, and that this was true even though the appeal was from a judgment taken by default. The same was held in *Telephone Company* v. *Cox,* 103 Miss. 541, 60 So. 641. See also: *Schloss* v. *Sheffield Steel & Iron Company,* 50 So. 366 (Ala.); *State* v. *Hall,* 54 So. 560 (Ala.); *State* v. *Brintle,* 93 So. 429 (Ala.).

Counsel, however, will probably adopt and argue the view which was held by the trial judge to the effect that the statutes have provided another method for the assessment of property omitted from the rolls by the assessor, and since such method has been provided, that is the exclusive method. An examination of the statutes bearing on this question show that such a position is not tenable.

The court in *Adams, Revenue Agent,* v. *First National Bank of Greenwood,* 103 Miss. 744, 60 So. 770, held that the board of supervisors of a county had no authority to assess property for back taxes, because no such power was given to them by statute, but on the contrary, such power was given solely to the assessor and to the revenue agent.

The case at bar, however, presents a situation entirely different. Here the power is expressly given by statute to the board to assess property which has been omitted from the roll. The board could and should have assessed this property to the defendant lumber company as omitted property, and the circuit court, on hearing the controversy anew, should have permitted testimony to have been introduced showing that the capital stock of the lumber company was subject to taxation, but was not assessed by the board.

The court erred in instructing the jury as follows: "And the court charges the jury at the instance of the defendant that buildings and fixed machinery on the land are real estate and not assessable as personal property. Given." *Tunica County* v. *Tate et al.,* 78 Miss. 294.

As to plaintiff's right to require production of books and papers. See section 15, chapter 323, Laws of 1920; Sec. 723, Hemingway's Code. Under the first of these statutes, the board of supervisors of Jackson county was given the authority to require the defendant lumber company to bring before it for inspection such of its books, documents, or papers as would fully inform the board as to the true value of the property to be assessed. Since the board of supervisors had this power, the circuit court, where the trial of the case is to be had *de novo* necessarily would on appeal be vested with the same power. Under the provisions of the second of these statutes, the court on good cause shown, may order either party to the suit to furnish the other with an inspection and copy of any of the books in its possession which contained evidence relative to the merits of the cause.

See *Roberson* v. *Greenwood Lumber Company,* 127 Miss. 793, 90 So. 487, a case practically on all fours with the case at bar. *State ex rel. Pabst Brewing Company* v. *Carpenter,* 8 L. R. A. (N. S.) 788, and N.

*Ford, White, Graham & Gautier,* for appellee.

One cannot read this record without coming to the conclusion that the trial court should have granted a peremptory instruction to the jury to find for the defendant. The assessment was of course *prima-facie* correct. See *Whittle* v. *City of Hattiesburg,* 132 Miss. 808. And the attorney-general offered no proof to show its incorrectness in any particular.

On the trial of this case, the attorney-general made no effort to conceal his true purpose. His representative admitted frankly that he had no proof to impeach the correctness of any property valuation, but that his purpose was to get the books of the defendant company in court for examination; and if they showed that the company owned other property not listed on the roll, he proposed to add such property. In other words, this is a fishing, or drag net expedition, and is not brought in good faith to secure a revision of the taxpayer's assessment.

According to the indisputed proof, the taxpayer in this case was grossly overassessed instead of being underassessed. This court held on the former trial of this case (see *Atty. General* v. *So. Paper Company,* 143 Miss. 870 [companion case]; also *Redmond* v. *City of Jackson,* (108 So. 444), that one taxpayer could not be assessed at a greater proportion of value than another. It is conclusively established that property is assessed at only seventy per cent of its value in Jackson county, and it follows with mathematical certainty that this defendant was overassessed by several thousand dollars.

The proof did not show that the company had any personal property not appearing on the roll, which ought to be added thereto; and in the next place, if there had

been such property, it could not be added in the circuit
court.  Taking up the first proposition, a careful read-
ing of the record will disclose that there was no proof
to show that there was such additional property, and no
effort to establish that there was any omitted from the
roll, except possibly that the capital stock of the corpo-
ration was not assessed.  As to this, we observe that the
capital stock of a corporation is no longer assessable
in Mississippi.  The old law was repealed, by Laws of
1926, p. 368.  As the result of the passage of that law,
the capital stock of a corporation is no longer taxable,
and only their personal and real property are assessable
like that of individuals.  The court will note that there is
no saving clause in the statute, and therefore when this
case was tried the company owned no taxes, and none
could have been collected out of it for 1925, the whole
statute levying taxes on capital stock having been re-
pealed.

The next phase of this question is, can the circuit court
in an appeal by the attorney-general add to a taxpayer's
assessment personal property which was not put there-
on by the assessor nor by the board of supervisors?  It
is true that these tax appeals by the attorney-general
are triable anew in the circuit court, but this is the first
occasion that we have known of it being contended that
the circuit court has power to assess property in the
first instance, or that it has any power, other than as a
board of review, in the matter of valuations.

We assume that the attorney-general has carefully
examined the statutes of Mississippi, and court deci-
sions touching this question.  He has not found a single
statute nor court case, which supports or tends to sup-
port, the view that omitted property may thus be added.
All the law is against him.  He could hardly expect this
court to adopt so novel a doctrine without some statu-
tory, or court case authority, and yet he finds none, and
can find none.  If the attorney-general can do what he
contends for in this case, clearly the constitutional office

of assessor might well be abolished, because in the at-
torney-general's cosmogeny there is no need of such an
officer.  The sole requirement would be to file with the
board a list of persons, and corporations, who are
thought to be taxable; the attorney-general would then
appeal from this, and have the circuit court make the
assessment.  He finds no need for any assessor.  While
the attorney-general apparently would like to have this
to be the law, we are grateful that the Constitution mak-
ers and the legislature have not adopted that scheme of
taxation.  Undoubtedly the assessor is a constitutional
officer; both the Constitution, and all legislative statutes
contemplate that property shall be listed and assessed
by the assessor!  This court has stricken down every
scheme which usurps or nullifies the duties of the asses-
sor's office.  The well-known case of *State, Revenue
Agent* v. *Tonella,* 70 Miss. 701, answers very satisfac-
torily all the contentions of the attorney-general in this
regard.

The attorney-general has reviewed and cited in his
brief, the Code Sections on Revenue, which he thinks are
pertinent on this subject.  None of them even remotely
hint at authorization to do what he wants here.  The
attorney-general, confessing his inability to find any
law supporting his contention, argues that he should be
permitted to add omitted property in the circuit court,
because the statute authorizing appeals by the attorney-
general, provides that the "controversy shall be tried
anew."  He argues that the board of supervisors have
the right to cause omitted property to be added, and that
therefore the circuit court should have the same power.
He entirely overlooks this important phase of the matter,
to-wit, neither the board or the assessor is a party to the
circuit court proceeding; one must assess, and the other
equalize, and in every other case where omitted property
is authorized to be added, the assessor must do it.  In
*Robinson Land & Lumber Company* v. *Attorney-General,*

the question here involved was not presented nor anything remotely akin to it.

It is true that the statute law of the state authorizes the production of books where necessary for the purpose of a trial, but those statutes have no application to a case of this sort where the books are wanted simply for the purpose of making a case which the attorney-general did not have and could not make. These statutes have been considered by this court in the case of *Assurance Society* v. *Clark,* 80 Miss. 471. This case seems to be the main one in point on this section. The only authority cited by opposing counsel is that of *Robertson* v. *Greenwood Grocery Company,* which involved a different state of facts. The attorney-general in his brief has cited that two statutes which seem to him to require the production of books. Section 15, chapter 323, Laws of 1920, authorizes the production of books before the board of supervisors in certain cases. The only penalty provided for the failure to obey such an order by the board of supervisors to produce the books is as follows: "Any person or concern failing or refusing to comply with such demand shall be precluded from objecting to any such assessment." Now, then, in this case suppose an order had been made by the board of supervisors to produce the books and defendant had declined.; the defendant was not asking anything from the board of supervisors, was not questioning any assessment, and therefore there would have been an end of the matter, and the assessment would simply have stood. The next section cited by the attorney-general is section 723, Hemingway's Code. Generally it provides that the court may direct an inspection and copy of books in proper cases, but the only penalty in it is as follows: "And if a defendant fails to comply with such order, the court may on motion give judgment or decree against the defendant by default or confession." Now, then, let us suppose that an order for the production of books had been made and defendant had refused. What would have happened?

The attorney-general would have been without the books, but what sort of judgment could the court have entered? The defendant was not asking any relief, and the assessment would simply have stood. We earnestly insist that plaintiff was not entitled to have the books produced on any theory of the case, but after all, there was much ado about nothing, because under the statute even if they had been directed to be produced and the defendant had refused, the court could only have rendered a judgment by default, and we inquire, a judgment for what? *Assurance Society* v. *Clark, supra,* answers the contention of the attorney-general completely, and it is really superfluous to go to other states for authority. However, it may be noted that under the decisions of other states, books are never required to be produced in a mere fishing proceeding. The subject is well treated in a note appearing in 31 L. R. A. (N. S.) p. 835. The attorney-general complains of the giving of a certain instruction for the defendant as follows: "The court charges the jury at the instance of the defendant that buildings and fixed machinery on land are realty and not assessable as personal property." See *Attorney-General* v. *Southern Paper Company,* 143 Miss. 874, which is a companion case to this one on the first appeal and the opinion is really in point here. *Bay St. Louis* v. *Tel. Co.,* 141 Miss. 1; 11 R. C. L. 1086.

Etheridge, J., delivered the opinion of the court.

The attorney-general appealed from the personal assessment of the appellee for the year 1925, under the provisions of chapter 120, Laws of 1918, permitting the attorney-general to appeal from such assessment.

The attorney-general filed a petition to the court for the issuance of a writ of *subpoena duces tecum* to produce the books of the company, and for an inspection under the direction of the court, and permission to take copies of such entries as might be pertinent to the ap-

peal. In this petition it is alleged that, in valuing the property of said defendant for assessment for purposes of taxation, it was the duty of the defendant to list and show all of the capital stock, surplus, and undivided profits as required by law; that the purpose of this appeal is to revise the said assessment by increasing the value thereof so as to bring about a proper, fair, and legal assessment of said property according to the Constitution and statutes of the state of Mississippi; that under the provisions of section 6939, Hemingway's Code 1917 (section 4305, Code of 1906), it was the duty of the board of supervisors of Jackson county, Miss., in passing upon and approving the assessment of the defendant's property, to add to and increase the said valuation to the actual value of its assets, including the capital stock, surplus, and undivided profits, and to that end it was the right and duty of the said board of supervisors, under the provisions of chapter 323 of the Laws of 1920, to require the defendant to bring before the board of supervisors such books and other papers of the defendant as would fully inform said board of supervisors of the actual value of the property belonging to the said defendant, and of each separate part thereof, but that the said board of supervisors did not perform its duty, but approved said assessment without requiring the said defendant to permit the said board of supervisors to examine said books and papers containing the necessary information; that by the provisions of chapter 120 of the Laws of 1918, under which this appeal is taken and is being prosecuted, this cause is to be tried *de novo* in this court, and that upon the trial in this court the plaintiff, acting for and on behalf of the state of Mississippi, and of Jackson county, and of the various taxing districts thereof, is entitled to have the defendant produce into court on the trial of the cause for the inspection of the court and the jury, such books, papers, records, memoranda, estimates, and other papers of the defendant as will fully inform the court and the jury as to all of the

property owned by said defendant and the true value thereof, including the capital stock, surplus, and undivided profits; and that, under the provisions of section 1003 of the Code of 1906 (section 723 of Hemingway's Code), the plaintiff is entitled to an order of this court requiring the defendant to produce into court the said books, papers, estimates, records, data, and memoranda for inspection by plaintiff and for submission to the court and jury and to permit plaintiff to have copies made. The plaintiff is informed and charges the fact to be that the defendant has in its possession or under its control inventories and other data showing the actual value of the property belonging to the defendant and full value and amount thereof, and the amount of the capital stock, surplus, and undivided profits and the amount of property on hand on February 1, 1925, and that, by reference to the aforesaid books and papers, it can be ascertained by the court and the jury the actual value of the property belonging to the said defendant company and the amount for which it should have been assessed for taxes for the year 1925.

The plaintiff further avers that the aforesaid books, inventories, memoranda, data, and records now in the possession or under the control of the defendant contain important evidence relating to the merits of this action and to the defense therein interposed by the defendant, and that it is necessary in order to promote the ends of justice in this case, for said books and papers to be produced into court on the trial of this cause for inspection by the court and jury, and for the inspection of same by plaintiff and the taking of copies thereof. This application was sworn to by the attorney representing the attorney-general.

The court deferred action for the time being upon this application, and the following day another application was filed for an inspection of the books and papers and copies of such portion thereof as contained evidence of value and amount of property owned by the defendant

on February 1, 1925, and assessable for taxation in said county and state. This application alleges that he (the attorney-general) has good cause and does believe that the defendant has in its possession or under its control books, papers, and documents which will show the amount, kind, and value of the property owned by it on February 1, 1925, and assessable for taxation in said county and state, that he has good reason to believe and does believe that the defendant has wholly failed to return its property for assessment purposes in the manner and form required by law, and that, said assessment not having been returned as required by law, such property has not been legally and properly assessed for the purpose of taxation, and that it is now the duty of the court to require the production of all books, papers, and documents which the defendant has in its possession or under its control which will inform the court of the amount, kind, and value of its property assessable for taxation for the year 1925, and to enter such assessment as should have been ordinarily entered, and moved the court that another order issue to require the defendant to produce in court books, documents, and papers, which it has in its possession or under its control, and permit the plaintiff, in the presence of and under the control of the court, to inspect and take copies of such portions thereof as contain evidence of the value, kind, and amount of property owned by defendant on February 1, 1925, which was assessable for taxation for said year, in said county and state. This application was likewise sworn to. This motion was by the court overruled.

Thereafter, on the 18th day of February, the attorney-general filed another application in which it was stated that the defendant lumber company is a domestic corporation of the state of Mississippi, and that L. N. Dantzler is president of said company, A. F. Dantzler is vice president, G. B. Dantzler is treasurer, and A. M. Cowan is secretary, and that said officers of said corporation have in their possession or under their control

books, papers, and documents belonging to said defendant which will show all of the taxable assets or personal property owned by said defendant and taxable in Jackson county, Miss., and that said property consists of cash, notes, accounts, advances, personal property of various kinds shown on the inventories, and various items of personal property, and that it is necessary in order to promote justice that said books, papers, etc., be produced on the trial of this cause for presentation to the court and jury in order to show and determine the amount of property owned by said defendant and taxable in Jackson county, Miss., for the year 1925. This application was also sworn to, and was likewise overruled.

The attorney-general on the hearing of the motion and during the hearing of the cause examined certain of the officers and agents of the defendant company with reference to the existence of such books and inventories, and it appears from the evidence that the company has such inventories, books, and other things as would disclose what property it had subject to taxation for the year 1925, by which the value thereof could be determined. But the trial judge was of the opinion that the attorney-general could not add to the assessment roll, on the appeal proceeding, any property that was not placed on the roll by the assessor or by the board of supervisors; and the appeal proceeding was limited to the value of the articles named on the assessment roll.

The assessment rendered by the defendant company did not contain the amount of shares of capital stock and show by whom owned, nor the value of the capital stock, surplus, and undivided profits.

It further appears from the record that the board of supervisors increased certain items of the assessment as made by the tax assessor, but the board did not add to the assessment roll as made by the assessor the capital stock and undivided profits and surplus, nor find the value thereof.

The principal controversy revolves around the question whether it was permissible, on the appeal by the attorney-general, to add to the items placed upon the roll other property which was assessable and which had not been placed thereon by the county assessor and the board of supervisors.

At the instance of the defendant, the court granted the following instruction:

"The court charges the jury at the instance of the defendant that there cannot be in this proceeding added to the roll any personal property of the defendant not now appearing thereon, and the sole question in the case is whether the personal property appearing thereon is properly valued or not."

The section providing for appeals from assessments governing this case is section 61, Hemingway's Code 1927 (Laws 1918, chapter 120), which reads as follows:

"*Appeal from Assessment of Taxes—Attorney-General, District Attorney, County Attorney May Appeal.*—1 Any person aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town or village, as to the assessment of taxes, may within five days after the adjournment of the meeting at which such decision is made, appeal to the circuit court of the county, upon giving bond, with sufficient sureties, in double the amount of the matter in dispute, but never less than one hundred dollars, payable to the state, and conditioned to perform the judgment of the circuit court, and to be approved by the clerk of such board, who, upon the filing of such bond, shall make a true copy of any papers on file relating to such controversy, and file such copy certified by him, with bond, in the office of the clerk of the circuit court, on or before its next term; and the controversy shall be tried anew in the circuit court at the first term, and be a preference case, and, if the matter be decided against the person who appealed, judgment shall be rendered on the appeal bond for damages at the rate of ten *per centum* on the amount in controversy and

all costs.  If the matter be decided in favor of the person who appealed, judgment in his favor shall be certified to the board of supervisors, or the municipal authorities, as the case may be, which shall conform thereto, and shall pay the costs.  The county attorney, the district, or the attorney-general, if the state, county, or municipality be aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town, or village as to the assessment of taxes, may, within twenty days after the adjournment of the meeting at which such decision is made, or within twenty days after the adjournment of the meeting at which the assessment rolls are corrected in accordance with the instructions of the state tax commission, or within twenty days after the adjournment of the meeting of the board of supervisors at which the approval of the roll by the state tax commission is entered, appeal to the circuit court of the county in like manner as in the case of any person aggrieved as hereinbefore provided, except no bond shall be required, and such appeal may be otherwise governed by the provisions of this section.''

It will be noted from a reading of this section that the controversy in the circuit court is tried anew.  In other words, it is a trial *de novo*, and the court is acting in the same capacity in such appeal as the board of supervisors act in passing upon and approving or correcting the assessment made by the county assessor.

This section also gives the county attorney, the district attorney, and the attorney-general, or either of them, the right to appeal if the said county or municipality be aggrieved by the board of supervisor's action in making such assessment.

By section 8227, Hemingway's Code 1927 (section 4305, Code of 1906), it is provided that:

''At the meeting for the hearing of objections to assessments, the board of supervisors shall not only hear and determine all objections that shall be filed, but it shall as well carefully examine the roll or rolls, and shall

then and there cause to be assessed any person or thing
that may be found to be omitted, and anything found to
be undervalued may be correctly valued. And in the
year in which land assessment is made the board shall
carefully examine the land roll and see that it embraces
all of the land in the county, and correctly represents it
as being the property of individuals or the state or
United States, according to the fact, and taxable or not
taxable according to law, and that all is correctly de-
scribed so as to be identified with certainty, and that
there are no double assessments; and all land improperly
omitted from the roll shall be added thereto by the board
or under its direction, and land incorrectly or insuf-
ficiently described shall be properly described, and land
which is graded too low or undervalued shall be properly
graded and valued. And the board shall cause all cor-
rections to be made in the rolls, which, being done, the
board shall enter an order approving the assessments,
with or without corrections, as the 'case may be, subject
to the right of parties in interest to appeal as provided
by law."

By section 759, Hemingway's Code 1927 (section 1003,
Code of 1906), it is provided:

"*Copy of Books, Papers, or Documents Furnished.*—
The court in which any action or suit is pending may, on
good cause shown, and after notice of the application to
the opposite party, order either party to give to the
other, within a specified time, and on such terms as may
be imposed, an inspection and copy, or permission to take
a copy, of any books, papers, or documents in his pos-
session or under his control containing evidence relating
to the merits of the action or proceeding or of the de-
fense thereto; and if compliance with such order be re-
fused, such books, papers or documents shall not be given
in evidence in the action or proceeding by the party so
refusing; and the court may punish the recusant party
as for a contempt of court; and if a complainant, or
plaintiff, fails to comply with such order, the court may,

on motion, give the like judgment for the defendant as in cases of nonsuit or dismissal; and if a defendant fails to comply with such order,. the court may, on motion, give judgment or decree against him by default or confession.''

By section 4267, Code of 1906 (section 6901, Hemingway's Code 1917), it is provided that—''All joint stock companies or corporations organized under the laws of, and doing business, in this state, shall be assessed for taxation and be taxed as follows:  The president or other officer of any joint stock company or corporation, other than banks and railroad companies, shall, on demand, on or before the first day of June in every year, deliver to the assessor of the county in which the company or corporation is domiciled or located, a written statement, under oath, of the capital stock paid in, and its market value, and to whom each share belongs; also a statement and the market value of all real estate owned by such company or corporation; all to be as of the first day of February of the year in which such statements shall be rendered.  The capital stock of such company or corporation shall be assessed to it for taxation to the extent of the full mount of the value thereof, as shown by such statement, less the aggregate value of such real estate, which shall be deducted from the value of such capital stock, such real estate to be subject to separate assessment and taxation as other real estate is assessed and taxed.''

Section 15, chapter 323, Laws of 1920, provides that— ''The board of supervisors may require any person, firm, corporation, or bank to bring their books before them while sitting as an equalization board or when hearing objections or complaints, and such other papers as will fully inform them as to the true value of· the property to be assessed.  And any person or concern failing or refusing to comply with such demand shall be precluded from objecting to any such assessment.''

Section 156 of the state Constitution provides that— ''The circuit court shall have original jurisdiction in all

matters civil and criminal in this state not vested by this Constitution in some other court, *and such appellate jurisdiction as shall be prescribed by law.*" (Emphasis supplied.)

It seems to have been the idea of the learned judge in the trial of the case that the circuit court could not be made a court for the addition of anything to the assessment roll that was not placed thereon by the assessor or by the board of supervisors; that the court could not be converted into an agency for the assessment of taxes.

It will be seen from this section of the Constitution, and that part emphasized, that the circuit court shall have such appellate jurisdiction as shall be prescribed by law, and it will be seen by a reading of the section on appeals, above quoted, that the cause shall be tried anew in the circuit court. It must be remembered that the valuation of property for assessment is a judicial act, and, while the Constitution creates the assessor, and he is required to list and value the property in the county for taxation, his act in so doing is not final, but is subject to review by proper tribunals created by law. This section of the Constitution must be considered in connection with other sections of the Constitution, and in connection with the known practice at the time of the adoption of the Constitution.

It is not questioned in the appeal here that the board of supervisors itself may lawfully add property to the assessment roll under the section above referred to, but it is insisted that the circuit court cannot do so, that it is limited to a review of what the board did as evidenced by the roll itself.

We think it is competent for the legislature to confer on the circuit court the power to try the case anew, as the legislature has done, and that, the case being tried *de novo,* the circuit court proceeds as though there had been no action by the board. Or, in other words, that it is not bound by what the board did, but may itself do on

appeal what the board should have done when the cause was before the board.

In *Whittle* v. *Hattiesburg,* 132 Miss. 808, 96 So. 741, it was held that under section 61, Hemingway's Code (section 81, Code of 1906), on appeal to the circuit court, the burden of proof is on the municipality, and not on the appellant, that the return of the assessor is *prima facie* correct, and not the judgment of the equalization board; in other words, that the appeal suspends the judgment of the board of supervisors, and the cause is to be tried in the circuit court just as though the court was itself the board of supervisors. That being true, and the board of supervisors having jurisdiction to add property to the roll, or assess persons thereon who have not been placed on the roll by the assessor, on appeal the circuit court may add such property to the assessment, or direct it to be done by the assessor as the board does. We think, therefore, the court below and the appellee in this appeal are wrong in their contention that the circuit court has no power to add to the roll such property and persons as should have been placed thereon but have not been so placed by the proper officers.

The trial court also seemed to be of the opinion that the requirement of the production of the books and inventories called for was unreasonable, and constituted an unlawful search and seizure, and that the statute did not authorize the court to bring in the books of the company for the purposes for which they were sought to be brought in.

It will be noted from the application and from the testimony in the record that the only books and inventories sought to be brought into court by the application were such as would show the property of the defendant company and the value and number of shares of capital stock. This with the property shown by the books to be possessed, and the inventories, and the value thereof, were not unreasonable.

The state, in order to make its power of taxation effective, must of necessity have power to compel the discovery of the taxpayer of his property, and to effect the production of the necessary evidence to show what property the citizen has. The reasonableness of the application to produce the books must be considered in connection with the subject-matter of the litigation, and the books that have a proper bearing upon the litigation and would throw light upon the issue are subject to production and to introduction in evidence on the trial of the issue.

Necessarily in tax appeals on equalization, not only is the property of the individual from which the appeal is prosecuted subject to consideration, but all of the taxable property of the taxpayer must be considered, valued, and equalized. This necessarily requires a rather full disclosure of the value of the property held by the taxpayer.

In the case of *Hale* v. *Henkel*, 201 U. S. 43, 70, 26 S. Ct. 370, 50 L. Ed. 652, the supreme court of the United States had occasion to deal with the question of the production of books and papers. At page 377 of the Supreme Court Reporter in that case:

"The second branch of the case relates to the non-production by the witness of the books and papers called for by the *subpoena duces tecum*. The witness put his refusal on the ground, first, that it was impossible for him to collect them within the time allowed; second, because he was advised by counsel that, under the circumstances, he was under no obligation to produce them; and, finally, because they might tend to incriminate him.

"Had the witness relied solely upon the first ground, doubtless the court would have given him the necessary time. The last ground we have already held untenable. While the second ground does not set forth with technical accuracy the real reason for declining to produce them, the witness could not be expected to speak with legal exactness, and we think is entitled to assert that the *sub-*

*poena* was an infringement upon the Fourth Amendment to the Constitution, which declares that 'the right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' ''

''The construction of this amendment was exhaustively considered in the case of *Boyd* v. *United States,* 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, which was an information *in rem* against certain cases of plate glass, alleged to have been imported in fraud of the revenue acts. On the trial, it became important to show the quantity and value of the glass contained in a number of cases previously imported; and the district judge, under section 5 of the Act of June 22, 1874 (18 Stat. at L. 187, chapter 391; U. S. Comp. Stat. 1901, p. 2018), directed a notice to be given to the claimants, requiring them to produce the invoice of these cases under penalty that the allegations respecting their contents should be taken as confessed. We held (page 622 [6 S. Ct. 528, 29 L. Ed. 748]) 'that a compulsory production of a man's private papers to establish a criminal charge against him, or to forfeit his property, is within the scope of the Fourth Amendment to the Constitution, in all cases in which a search and seizure would be,' and that the order in question was an unreasonable search and seizure within that amendment.

''The history of this provision of the Constitution and its connection with the former practice of general warrants, or writs of assistance, was given at great length, and the conclusion reached that the compulsory extortion of a man's own testimony, or of his private papers, to connect him with a crime of a forfeiture of his goods, is illegal (page 634 [6 S. Ct. 534, 29 L. Ed. 752]), 'is compelling a man to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure—and

an unreasonable search and seizure—within the meaning of the Fourth Amendment.'

"Subsequent cases treat the Fourth and Fifth Amendments as quite distinct, having different histories, and performing separate functions. Thus in the case of *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, 14 S. Ct. 1125 [15 S. Ct. 19], 38 L. Ed. 1047 [39 L. Ed. 49], 4 Interst. Com. Com'rs R. 545, the constitutionality of the Interstate Commerce Act, so·far as it authorized the circuit courts to use their processes in aid of inquiries before the commission, was sustained, the court observing in that connection:

" 'It was clearly competent for Congress, to that end, to invest the commission with authority to require the attendance and testimony of witnesses, and the production of books, papers, tariffs, contracts, agreements, and documents relating to any matter legally committed to that body for investigation. We do not understand that any of these propositions are disputed in this case.'

"The case of *Adams* v. *New York,* 192 U. S. 585, 24 S. Ct. 372, 48 L. Ed. 575, which was a writ of error to the supreme court of the state of New York, involving the seizure of certain gambling paraphernalia, was treated as involving the construction of the Fourth and Fifth Amendments to the Federal Constitution. It was held, in substance, that the fact that papers pertinent to the issue may have been illegally taken from the possession of the party against whom they are offered was not a valid objection to their admissibility; that the admission as evidence in a criminal trial of papers found in the execution of a valid search warrant prior to the indictment was not an infringement of the Fifth Amendment, and that, by the introduction of such evidence, defendant was not compelled to incriminate himself. The substance of the opinion is contained in the following paragraph. It was contended that: 'If a search warrant is issued for stolen property, and burglars' tools be discovered and seized, they are to be excluded from testi-

mony by force of these amendments.   We think they were never intended to have that affect, but are rather designed to protect against compulsory testimony·from a defendant against himself in a criminal trial, and to punish wrongful invasion of the home of the citizen or the unwarranted seizure of his papers and property, and to render invalid legislation or prejudicial procedure having such effect.'

"The Boyd case must also be read in connection with the still later case of *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25, 24 S. Ct. 563, 48 L. Ed. 860, which arose upon the petition of the commission for orders requiring the testimony of witnesses and the production of certain books, papers, and documents.   The case grew out of a complaint against certain railway companies that they charged unreasonable and unjust rates for the transportation of anthracite coal.   Objection was made to the production of certain contracts between these companies upon the ground that it would compel the witnesses to furnish evidence against themselves, in violation of the Fifth Amendment, and would also subject the parties to unreasonable searches and seizures. It was held that the circuit court erred in holding the contracts to be irrelevant, and in refusing to order their production as evidence by the witnesses who were parties to the appeal.   In delivering the opinion of the court, the Boyd case was again considered in connection with the Fourth and Fifth Amendments, and the remark made by Mr. Justice DAY that the immunity statute of 1893 'protects the witness from such use of the testimony given as will result in his punishment for crime or the forfeiture of his estate.'

"Having already held that, by reason of the Immunity Act of 1903, the witness could not avail himself of the Fifth Amendment it follows that he cannot set up that amendment as against the production of the books and papers, since, in respect to these, he would also be protected by the Immunity Act.   We think it quite clear

that the search and seizure clause of the Fourth Amendment was not intended to interfere with the power of courts to compel through a *subpoena duces tecum,* the production, upon a trial in court, of documentary evidence. As remarked in *Summers* v. *Moseley,* 2 Cromp. & M. 477, it would be 'utterly impossible to carry on the administration of justice' without this writ. The following authorities are conclusive upon this question: *Amey* v. *Long,* 9 East, 473; *Bull* v. *Loveland,* 10 Pick. [Mass.] 9; *United States Exp. Co.* v. *Henderson,* 69 Iowa, 40, 28 N. W. 426; Greenl. Ev. 469a.''

The decisions held also that a corporation is different in this respect from an individual, because under the law the state has the power of supervision of the corporation, and, for all proper purposes, of examining into its acts to see whether or not it is abusing its charter powers, etc. It would certainly be far reaching to hold that the state could not compel the production of books and papers for the purpose of taxing the property of either individuals or corporations, and the application for process of this kind must be kept within reasonable limits, and must not be abused, as was held in *Hiawatha, etc., Co.* v. *Mississippi Farm Bureau,* 138 Miss. 605, 103 So. 345.

In the case before us, however, the application for the production of papers is not for the production of every paper of every kind through a long series of years, but is for such papers and inventories as would show the taxable property of the corporation for a particular year, and the value of such property. The evidence taken shows that such papers are in existence and that they can be brought into court without undue inconvenience for the trial of the issue. The court has power to prevent abuse, and the petition prays for the inspection to be made in the presence and under the control of the court.

We are of the opinion that the court erred in refusing to issue the process and compel the production of such

books and papers, and that it erred in instructing the jury that they could not consider anything except the property which had been listed upon the assessment roll by the assessor and the board of supervisors. For the errors indicated, the judgment of the court below will be reversed, and the cause remanded for a new trial in accordance with the views expressed in this opinion.

*Reversed and remanded.*