GRIFFIS, P.J.,
for the Court:
¶ 1. This is the appeal of .an assessment of Mississippi state income taxes.- The Mississippi Department of Revenue (“Department”) conducted an audit of state income taxes and determined that additional taxes were owed. The taxpayers disputed the assessment and appealed the Department’s assessment to the chancery court. The Hinds County Chancery Court affirmed the assessment. The taxpayers now appeal the chancellor’s judgment and argue that: (1) the chancellor applied the incorrect standard of review; (2) the chancellor improperly placed the burden of proof on the taxpayers for alternative apportionment; (3) the Department’s use of special apportionment violated the Mississippi Administrative Procedure Act; and (4) the assessed penalties were erroneous because the chancellor found the taxpayers acted reasonably and -without willful neglect. Finding reversible error, we reverse and remand the judgment of the chancery court for further proceedings consistent with this opinion.
PROCEDURAL AND FACTUAL HISTORY
¶ 2. The taxpayers are Equifax, Inc. and Equifax Credit Information Services, Inc. (“ECIS”) (collectively referred to as “Equifax”). Equifax, Inc. is a Georgia corporation in the business of consumer credit reporting. It sells credit information and other services to consumers and businesses across the country, Equifax, Inc. was registered to do business and was in fact doing business in Mississippi. 'Equi-fax, Inc. is-the:, parent company of. ECIS. The services provided by Equifax, Inc and ECIS include: credit reporting, information, services, direct mail marketing, risk management, and mortgage loan processing and approval. The primary services provided are credit reports, credit scores, and fraud alerts.
¶ 3. The Department audited Equifax for payment of state income taxes for the period of January 1, 2000, through December 31, 2003 (the “audit period”). During the audit period, Equifax had approximately 800 customers located in Mississippi. The revenue generated from these Mississippi customers was $5,275,406 in 2000, $6,579,281 in 2001, $5,646,283 in 2002, and $5,178,370 in 2003. Based on these figures, the total gross receipts for, the sale of Equifax’s services provided to Mississippi customers during the audit period totaled $22,679,340.
¶4. Equifax did not have a corporate office in Mississippi but employed three Mississippi residents. = Equifax’s Mississippi customers requested and received services from Equifax at their Mississippi locations. These transactions primarily occurred electronically and took approximately three seconds from the time the customer requested the credit report or score to'the time they received the information.
¶ 5. Equifax timely filed Mississippi state income tax returns for each year in the audit period. However, Equifax reported no taxable income in the State for each of these years and paid no income tax for each year. In computing taxable income, Equifax relied on the Department’s regulations and the standard-apportionment method for service companies. As a result, Equifax determined that it had no *746 income subject to tax in Mississippi.[1]
¶6. At the conclusion of the audit, on February 28, -2008,' the Department issued assessments against Equifax. The Department determined that the apportionment method used by Equifax did not fairly reflect the extent of Equifax’s business in Mississippi. The Department determined Equifax should have used an alternative-apportionment method, a market-based sourcing method, during the audit periód.
¶ 7. Equifax disagreed with the assessments and appealed the assessments to the Mississippi Tax Commission Board of Re-viéw (the “Board”).[2] The Board upheld the assessments in a reduced amount. Equifax then appealed to the three-member Tax Commission, which upheld the Board’s reduced assessments.
¶ 8. On May 29, 2009, Equifax paid the assessments, under protest, including interest and penalties. Equifax, Inc.’s assessments totaled $467,836; and ECIS’s assessments totaled $271,201.
¶ 9. On June 1, 2009, pursuant to Mississippi Code Annotated -section. 27-77-7 (Rev. 2008), Equifax appealed the assessment to the Hinds County Chancery Court. He held an evidentiary hearing on all issues presented. The chancellor then entered an. order and final judgment, dated October 26, 2010, affirming the Department’s assessments. From this judgment, Equifax appeals.
• ANALYSIS

1. Whether the chancellor applied the incorrect standard ofmview.

¶ 10. An appellate court’s review should always begin with the standard of review. The correct standard of review here proves conclusive.
¶ 11. Typically, the standard of review in the appeal from an administrative agency decision is “limited by the arbitrary and capricious standard.” Buelow v. Glidewell, 757 So.2d 216, 219 (¶ 9) (Miss.2000) (citing Miss. State Tax Comm’n v. Mask, 667 So.2d 1313, 1316 (Miss.1995); Miss. State Tax Comm’n v. Dyer Inv. Co., 507 So.2d 1287, 1289 (Miss.1987)). This means that the reviewing court may “reverse the decision of an administrative agency only if the decision (1) was unsupported by substantial evidence; (2) was arbitrary and capricious; (3) was beyond the power of the administrative agency ...; or (4) violated the complaining party’s statutory or constitutional right....” Buffington v. Miss. State Tax Comm’n, 43 So.3d 450, 453-54 (¶ 12) (Miss.2010) (footnote omitted and emphasis added). The chancellor cited his standard of review in his order.
¶ 12. Normally, the Department, as an administrative agency, is entitled to the above standard of review. This is not the normal case. The Legislature has established a different standard that is applies here.
¶ 13. In Title 27, Chapter 77 of the Mississippi Code Annotated, titled “Appellate Review for Taxpayers Aggrieved by Certain Actions of the Department of Revenue,” the Legislature determined that a different appellate standard of review should be used when considering Department findings. Both the Department and Equifax agree that section 27-77-7 governs this appeal.
*747 ¶ 14. Section 27-77-7(4), as of the date of this appeal,[3] provided:
The chancery court in which a petition under subsection (1) of this section is properly filed shall have jurisdiction to hear and determine the cause or issues joined as in other cases. In any petition in which the taxpayer is seeking a refund or credit for an alleged overpayment of tax or for taxes paid under protest under, subsection (3) of this section, the taxpayer shall prove by a preponderance of the evidence that he alone bore the burden of the tax sought to be refunded or credited and- did not directly or indirectly collect the tax from anyone else. At trial of any action brought under this section, the chancery court shall give deference to the decision and interpretation of law and regulations by the [Department] as it does with the decisions and interpretation of any administrative agency, but it shall try the case de novo and cond/uct a full eviden-tiary judicial hearing on the issues raised. Based on the evidence presented at trial, the chancery court shall determine whether the party bringing the appeal has proven■ by a preponderance of the evidence or d higher standard if required by the issues raised, that he is entitled to any or all of the •relief he has requested. The chancery count shall decide all questions presented, including those as to legality and the amount of taso or refund due, and if it finds that the tax assessment or denial of refund claim in issue is incorrect or invalid, in whole or in part, it shall determine the amowd of tax or refund due, ineluding interest and, if applicable, penalty to date, and enter such order or judgment as it deems proper. ,..
(Emphasis added).
¶ 15. We begin with the standard of review cited in the chancellor’s order. The chancellor first cited the arbitrary- and-capricious standard as the. appropriate standard of review. , Then, the chancellor began his discussion with a block quote of section 27V77-7. However, the chancellor then held: . .
Equifax clearly bears the burden of proving, by a preponderance of the evidence, that the decision, of the [Department] is reversible under the limited circumstances set forth above. “A re-buttable presumption exists in favor of the administrative agency’s decision and findings, and the challenging party has the burden of providing otherwise.” Cummings. v. Miss. Dep't of Employment Sec., 980 So.2d 340, 344 (Miss.Ct.App.2008). This court cannot find, that Equifax has met this burden.
¶16. As set forth above, the correct standard of review is found in section 27-777(4). The chancellor’s citation to Cummings, an appeal of a Mississippi Employment Security Commission, provides no authority or guidance here. In fact, Cummings directly contradicts the express language of section 27-77-7(4). Section 27-77-7(4) neither sanctions nor allows the chancellor to give a “rebuttable presumption ... in favor of”. the Department’s finding. The chancellor’s application of the standard' of review was error.
¶ 17. This appeal presents an interesting contrast of positions. Both parties cite the same sentence of section 27-77-7(4) as the operative language: .
*748 At trial of any action brought under this section, the chancery court shall give deference to the decision and interpretation of law and regulations by the [Department] as it does with the decisions and interpretation of any administrative agency, but it shall try the case de novo and conduct a full evidentiary judicial hearing on the issues raised.
In its brief, the Department highlights the first portion of this sentence, and Equifax highlights the second portion of the sentence.' Before the chancellor, the Department was successful because the chancellor clearly gave “deference” to the Department’s decisioh. Equifax claims that it was reversible error for the chancellor to give the Department deference; instead, the chancellor was required to “try the case de novo.”
¶ 18. This Court and the parties agree that section 27-77-7(4) required the chancellor conduct a trial de novo. This case seems to create a conflict as to exactly what a trial de novo means hi an appeal from a Department decision.
¶ 19. In Mississippi State Tax Commission v. ANR Pipeline Co., 806 So.2d 1081, 1084 (¶ 14) (Miss.2001), the supreme court held that a similar statute “should be applied literally to require circuit courts to try ad valorem tax cases anew[.]” A de novo review “means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken.” Cal. Co. v. State Oil & Gas Bd., 200 Miss. 824, 838-39, 27 So.2d 542, 544 (1946) (citing Knox v. L.N. Dantzler Lumber Co., 148 Miss. 834, 854-55, 114 So. 873, 876 (1927)). Thus, the chancery court’s review of the Department’s decision should have been conducted just as if the chancery court were sitting as the. Department.
¶ 20. We move to the question of what the Legislature intended when it included the instruction for the chancellor to give “deference to the decision and interpretation of law and regulations by the Department, of Revenue as it does with the decisions and interpretation of any administrative agency[.]” Miss.Code Ann. § 27-77-7(4). The general definition of the word “deference” would mean that the chancellor should submit to or respect the Department’s interpretation of its regulations.
¶21. Here; deference to the Department’s decision would interfere with the chancery court’s ability to try the case anew. If the chancery court were to try this case as if it were the Department, the Department would have the burden to prove that its assessment method was correct.
¶22. Equifax computed its taxable-income based on the Department’s standard formula for service companies. See Miss. Admin. Code 35-111-8.06:402.09.- The Department made the assessment based on its determination that an alterative apportionment formula should be used. See Miss. Admin. Code 35-111-8.06:402.10. Regulation 402.10 states:
Other Provisions. If the allocation and apportionment provisions of this Regulation do not fairly represent the extent of the taxpayer’s business activity in this state, the taxpayer may petition for, or the Commissioner may require, in respect to all or any part of the taxpayer’s business activity, if reasonable:
1. Separate accounting;
2. The exclusion of any one of the factors;
3. The inclusion of one or more additional factors which' will fairly represent the taxpayer’s business activity in this state; or
*749 4. The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer’s income.
Mississippi has not adopted the Uniform Division , of Income for Tax Purposes Act (“UDITPA”). However, Regulation 402.10 is modeled after UDITPA section 18.[4] Because this provision of our regulations is modeled after UDITPA, we look to other jurisdictions regarding the burden of proof when alternative apportionment is used.
¶23. In Microsoft Corp. v. Franchise Tax Board, 39 Cal.4th 750, 47 Cal.Rptr.3d 216, 139. P.3d 1169, 1178 (2006), the California Supreme Court analyzed the implications of alternative apportionment under UDITPA. The Tax Board argued that the amount of tax paid to California did not fairly represent the amount of business in the state. Id. The court held “[a]s the party invoking [the UDITPA alternative-apportionment provision]; the Board 'has the burden of proving by clear and convincing evidence that (1) the'approximation provided by the standard formula is not a fair representation; and (2) its proposed alternative is reasonable.” Id. (emphasis added).
¶ 24. Other jurisdictions have come to a similar conclusion. The Tennessee Court of Appeals held “[t]he standard statutory apportionment formula is presumed .to be correct, and the party seeking .to employ an alternate method has the burden of showing that the statutory method is inappropriate.” Am. Tel. & Tel. Co. v. Huddleston, 880 S.W.2d 682, 691 (Tenn.Ct.App.1994) (emphasis added). The Utah Supreme Court held “[ajpportionment under the [UDITPA] is the. prescribed method. The use of any method other than apportionment should be exceptional, and the party who seeks to invoke the applicability of the relief provisions has the burden of proof.” Deseret Pharm. Co. v. State Tax Comm’n, 579 P.2d 1322, 1326 (Utah 1978) (emphasis added).
¶ 25. Here, the matter tried before the chancellor had to be tried just as if it were first tried before the Department. The problem is that the chancellor in effect switched the burden of proof by giving the Department “deference” or the benefit of a “rebuttable presumption.” This case must be decided based on whether the Department met its burden of proof that the alternate-apportionment method was appropriate' rather than the standard-apportionment method set forth in its regulations. For the Department to prevail, the Department must first meet this burden of proof.'
¶26. The chancellor’s order questions the Department’s ability to meet its burden of proof. Regardless, the order indicates that the chancellor’s decision was based on his incorrect application of the standard of review. The chancellor’s order held:
This Court further agrees with Equifax that there are other methods preferable to the apportionment method utilized by the MSTC. However, when interpreting the rules, regulations!,] and statutes under which the Commission operates this Court cannot substitute its “judgment *750 for the agency’s unless the latter’s interpretation is arbitrary and unreasonable.” Owens Corning v. [Miss. Ins. Guar. Ass’n], 947 So.2d 944, 945-46 (Miss.2007) (citing Elec. Data Sys. Corp. v. Miss. Div. of Medicaid, 853 So.2d 1192, 1202 (Miss.2003)). Although th[is] Court finds the application of equitable apportionment and the market-based sourcing method to be somewhat concerning, it cannot be said to rise to the level of arbitrary or unreasonable.
¶ 27. Equifax as the taxpayer apparently relied on the prescribed income .tax formula for service companies, After receiving no tax payments, the Department concluded that the income tax reported by Equifax did not fairly represent the amount of business Equifax did in Mississippi. The Department sought to use the alternative-apportionment formula provided in Regulation 402.10, Thus, before the Board of Review and on appeal to :the chancery court, the Department had the burden of proof to prove: (1) the standard formula does not fairly represent the. activities of Equifax within the State; and (2) the alternative formula to be used is reasonable.
¶ 28. We find that the chancellor committed reversible error, under Section 27-77-7(4), when he gave the Department the benefit of a rebuttable presumption and when he applied an arbitrary-and-capricious standard. Having applied' this standard, the chancellor did not conduct a de novo review of the matter. Section 27-77-7(4) expressly requires that:
The chancery court shall decide all questions presented, including those as to legality and the amount of tax or refund due, and if it finds that the tax assessment or denial of refund claim in issue is incorrect or invalid, in whole or in part, it shall determine the amount of tax or refund due, including interest and, if applicable, penalty to date, and enter such order or judgment as it deems proper. •
¶29. Because the Department sought to use an alternative-apportionment method and the Department bore the burden of proof that such alternative apportionment was the proper method to assess Equifax’s income tax obligation; and because the case is to be tried de novo or “anew,” the Department retains the burden of proof before the chancéllor. The chancellor must decide whether the Department met its burden of proof,'and the Department must prove anew that the alternate-apportionment method was indeed correct method.'
,¶30. The Legislature has created an appellate safeguard to the Department’s assessment of taxes and required that the chancellor “shall decide all questions presented ... and enter such order or judgment as it deems proper.” Miss.Code Ann. § 27-77-7. Thus, we conclude that the chancellor was incorrect as a matter of law to give deference to the Department’s decision and apply an arbitrary and capricious standard.
¶ 31. Here, the chancellor failed to decide all questions presented. He recognized that the Department1 may not have met its burden of proof when he held “[t]his Court further agrees with Equifax that there are other methods preferable to the apportionment method utilized by the MSTC.” Accordingly, we reverse the chancellor’s' judgment and remand for further proceedings consistent with this opinion.

2. Whether the use of special apportionment violates the Mississippi Administrative Procedures Act.

¶32. To expedite the review of this case, we also consider another issue presented by Equifax.
*751 ¶ 33. Equifax argues that the Department implemented a new rule to determine the amount of taxes it owed without following the procedure for an agency adopting an amendment to a specific rule. Specifically, Equifax argues the Department failed to consider the economic impact of the proposed rule. Mississippi Code Annotated section 25-43-3.105(1) (Rev. 2010) states:
Prior to giving the notice required in [Mississippi Code Annotated sjection 25-43-3.103 [ (Rev. 2010) ], each agency proposing the adoption of a rule or significant amendment of an existing rule imposing a duty, responsibility -or requirement on any person shall consider the economic impact the rule will have on the citizens of our state and the benefits the rule will cause to accrue to those citizens. For purposes of this section, a “significant amendment” means any amendment to a rule for which the total aggregate cost to all persons required to comply with that rule exceeds .One Hundred Thousand Dollars ($100,r. .000.00).
¶ 34. Here, the Department did not create a new tax policy, but rather relied on a regulation that was previously in place. Regulation 402.10 is currently in the tax regulations relied on by taxpayers and the Department. In the regulation, a taxpayer or the Commissioner may seek to use alternative apportionment. See Miss. Admin. Code 35-111-8.06:402.10. The Department did not implemeht a new rule, but rather relied on regulations in place. Further, the Department did not issue a rule for all service companies, but-rather relied on a previously existing regulation for usé in Equifax’s situation. Applying a regulation on an ad hoc basis does not conflict with the Mississippi Administrative Procedure Act.
¶ 35. Accordingly, we And this issue has no merit.
¶ 36. All other issues presented in this appeal are rendered moot by the reversal .and remand of this action.
¶37. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., BARNES, ISHEE, ' ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.'

. In years prior to the audit period, Equifax used a different apportionment method, The method used in the earlier years resulted in the payment of Mississippi state income taxes,

. ■ Since the time of the audit, the Mississippi State Tax Commission has changed its name to the Mississippi Department of Revenue,

. We note, that Section 27-77-7 was amended effective July 1, 2010, The amendment changed subsection (4) and restated it as subsection (S), The amendment also made sever.al non-substantive changes.to the statute’s language. The amendment does not affect the outcome of this appeal', but does create some confusion for this opinion.

. Section 18 provides:
If the allocation and apportionment provisions of this Act do not fairly represent the extent of the taxpayer’s business activity in this state, the taxpayer may petition for or the [tax administrator] may require, in respect to all or any part of the taxpayer’s business activity, if reasonable: (a) separate accounting; (b) the exclusion of any one or more of the factors; (c) the inclusion of one or more additional factors, which will fairly represent the taxpayer’s business activity in this state; or (d) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer’s income.