## CAPITAL NAT. BANK *v*. CITY OF JACKSON.

(Division A.  Jan. 11, 1932.)

[139 So. 163.  No. 29835.]

**Alexander & Alexander**, of Jackson, for appellant.

W. E. Morse, of Jackson, for appellee.

Argued orally by **Julian Alexander** and **J. C. Satterfield**, for appellant, and by **W. H. Watkins**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellant appealed to the court below from an order by the appellee raising the assessment of its personal property over its written protest, which order the court below affirmed.

The assessment complained of is against the appellant in its corporate capacity, and not on the shares of its capital stock, but it disclaims any objection to the assessment on that ground. The appellant is a national bank domiciled at Jackson, Mississippi, and in returning its property for assessment for municipal taxes it set forth that its capital stock was three hundred thousand dollars, and its surplus amounted to three hundred twenty-five thousand dollars. It then deducted from the aggregate of these two amounts the sum of three hundred thousand dollars, leaving the value of its property for assessment of taxes at three hundred twenty-five thousand dollars. The appellee declined to permit this deduction, and assessed the bank's property at six hundred twenty-five thousand dollars. The appellant's contention is that under section 11, chapter 22, Laws of 1930, and section 5219 of the United States Revised Statutes (as amended 12 U. S. C. A., sec. 548), its surplus to the amount equal to its capital stock is exempt from taxation. The first of these statutes grants such exemption to state banks

and to national banks which comply with its provisions. The appellant has complied with only one of these provisions, and that is the one set forth in section 10 of the statute, which requires the investment of a bank's surplus "up to one hundred per cent of its capital in bonds of the United States, state of Mississippi, counties, districts and municipalities of the state of Mississippi."

In 1914 the legislature, by chapter 124 of the laws of that year, established a state banking department and provided an elaborate scheme for guaranteeing the payment of bank deposits by the assessment of all banks therefor. This assessment (section 35 of the statute as amended by section 33, chapter 172 of the Laws of 1922) is one-twentieth of one per cent of the average guaranteed deposits less capital and surplus of each bank. The money realized from this assessment was insufficient for that purpose, so that when the legislature met in 1930 it was confronted with an immense deficit in the amount due depositors of banks that had failed. In order to remedy the situation, chapter 22, Laws of 1930, was enacted, by which the issuance of guaranty certificates to the depositors of banks that should thereafter fail was discontinued. By section 3 thereof the assessment of one-twentieth of one per cent on unsecured bank deposits was continued, the money realized therefrom to be applied to the payment of guaranty certificates theretofore issued by the state banking department.

Sections 6-A and 11, chapter 22, Laws of 1930, are as follows: "Sec. 6-A. That for the purpose of creating a depositor's protection fund to be applied to the payment of depositors in such banks as may fail during the time required under this act for liquidating its present guaranty deficit, each bank operating under this act shall be assessed by the superintendent of banks on December 31st, of each calendar year, beginning December 31, 1930, three per cent on the part of its surplus, herein,

by this act, exempted from taxation; Provided that the rate of assessment, on the surplus exempted in this act shall never, for any one calendar year, be less than three per cent, unless the depositor's protection fund so created by the assessment of three per cent shall exceed three hundred thousand dollars and in such event the rate of assessment may be lowered to such rate of assessment on the tax exempt surplus as will produce for the depositor's protection fund three hundred thousand dollars and no more for any calendar year.

"Sec. 11. Provided the surplus is invested as provided in the preceding section that to encourage banks to accumulate surplus and thereby better maintain themselves as public institutions and to justify the requirements that while operating as state banks they meet the assessment made by the state banking department from year to year to pay the outstanding guaranty certificates, the surplus of all state banks in an amount not exceeding one hundred per cent of their capital at the time of the passage of this act, or at the time of their organization if organized after the passage of this act, shall be exempt from all taxation until the outstanding guaranty certificates as described in this act are liquidated as herein provided, at which time such exemptions shall cease. In returning their property for taxation for the year 1930 and thereafter, so long as the bank pays the guaranty assessments as herein provided, each bank shall deduct such exempt surplus from the valuation of the shares of capital stock arrived at in the manner provided by section 1 of chapter 193 of the Laws of 1920, being section 8203 of Hemingway's Code of 1927, for the purpose of fixing the valuation on which state, county and municipal taxes shall be paid; provided that where banks existing under the national laws comply with the provisions of this act, the basis for the taxation of the shareholders thereof shall be the same as for state banks."

This statute was declared constitutionally valid in City of Jackson v. Deposit Guaranty Bank & Trust Co., 160 Miss. 752, 133 So. 195.

The reasons advanced by the appellant in support of its contention that its surplus to an amount equal to its capital stock is exempt from taxation may be reduced in substance to this: National banks are without authority under the national banking act to comply with the requirements of sections 6-A and 11 of chapter 22, Laws of 1930, and therefore the proviso of section 11 should be construed not to require national banks to comply therewith; but if the contrary construction should be adopted, then the statute violates section 5219, Revised United States Statutes (as amended 12 U. S. C. A., sec. 548), which provides that "in the case of a tax on said shares (of national banks) the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks.''

Chapter 22, Laws of 1930, does not contemplate, and the appellant makes no contention to the contrary, that national banks shall come under the supervision of the state banking department and become members of the state bank guaranty system. The provisions of the statute with which a national bank must comply in order to obtain the exemption from taxation on its surplus are the provisions thereof on which the exemption from taxation of the surplus of state banks is based. This exemption is clearly based on the new burdens which the statute places on banks, and which are set forth in sections 6-A, 10, and 11 thereof.

We will assume that the state could not coerce national banks into doing the things required by these sections of the statute, but our attention has not been called to any federal statute which prevents national banks from

voluntarily doing things of that character in lieu of ad valorem taxes.

This brings us to the real question for decision, which is: Does a compliance with the provisions of the statute impose a greater rate of taxation on national banks than is imposed on state banks?

It is manifest that the legislature did not intend to discriminate against national banks by the enactment of chapter 22, Laws of 1930, but was attempting to exercise its undoubted power to regulate the state banks in such way as to place such banks and national banks on a parity, in so far as it exacted money from them for public purposes. In so far as the national banking act is concerned, leaving constitutional questions out of view, the state could have exacted the same ad valorem tax from state and national banks and then appropriated from its treasury the amount of taxes it collected on the surplus of these banks, or any other amount it desired, for the purposes set forth in sections 6-A and 11 of the statute. Instead of taking that course, it assessed the surplus of state banks directly for the purposes set forth in those sections in lieu of ad valorem taxes thereon, and granted to the national banks the right to voluntarily pay the same per cent on their surplus as assessed against state banks in lieu of ad valorem taxes thereon. Both methods impose the same burden and reach the same end, and it is difficult to see why national banks can complain of the one but could not of the other.

But it is said that the three per cent of their surplus which the state banks are required, and national banks are permitted, to pay goes to guarantee the payment by state banks of money deposited with them, and to that extent national banks are placed at a disadvantage in competition with state banks. What we have just hereinbefore said would seem to cover this objection also, but, aside from that, the alleged discrimination against national banks is more apparent than real, when the other

burdens which the statute places on state banks are taken into consideration, the freedom from which renders the situation of national banks, if not more desirable certainly not more burdensome. We are unable to perceive how the statute puts national banks at a disadvantage in their competition with state banks, or other moneyed capital in the hands of citizens of this state, and unless such disadvantage can be said to result therefrom section 5219, United States Revised Statutes' (as amended 12 U. S. C. A., sec. 548) is not violated.

Affirmed.