## CITY OF HATTIESBURG v. FIRST NAT. BANK OF HATTIESBURG.*
### No. 7761.

District Court, S. D. Mississippi, Jackson Division.
Aug. 22, 1934.

*Order affirmed on rehearing — F. Supp. —.

Green, Green & Jackson and Harold Cox, all of Jackson, Miss., for City of Hattiesburg.

Watkins & Eager, of Jackson, Miss., for the bank.

HOLMES, District Judge.

The city of Hattiesburg, by due process of law, is proceeding to assess and collect ad valorem taxes from the First National Bank of Hattiesburg, Miss., as agent for its shareholders, upon its personal property (denominated "surplus"), valued at $250,000, for each of the years 1930, 1931, and 1932, which it claims escaped taxation for said years. The proceeding was instituted by the state tax collector, pursuant to the authority conferred upon him by section 6991 of the Mississippi Code of 1930, and the laws amendatory thereof, who gave notice to the city tax assessor to proceed to enter on his rolls an assessment of said property against said bank, as agent for its shareholders, for the years and in the amounts stated, and to file the same with the clerk of the city commission of Hattiesburg, to be dealt with by him as provided by law. The assessment having been made and filed with the clerk by the city assessor, as directed by the state tax collector, notice that the same had been received and would come on for hearing before the board of mayor and commissioners of said city on June 22, 1933, was duly given to the First National Bank, as required by the statutes, and in response to said notice the bank, by its officers and attorneys, appeared and protested against said assessment, praying that it be disallowed, abrogated, and set aside for each of said years, as all taxes due by it or its shareholders had been fully paid, and as any additional assessment was wholly unauthorized by state or federal law. The matter came on for hearing on the date named, and, the same being had, after a consideration of the protest filed by the bank, the board approved the assessments for 1931 and 1932, but passed over for the time being that for 1930. Accordingly, it entered an order instructing the city clerk to furnish to the city tax collector a certified copy of the assessments for the fiscal years 1931 and 1932, and instructed the latter to collect the taxes thereon in the manner provided by law.

Feeling aggrieved by the decision of the municipal board, the bank appealed to the circuit court of the county by giving bond, with sufficient sureties, in accordance with section 62 of the Mississippi Code of 1930, which authorizes the appeal; provides for the making and filing of "a true copy of any papers on file relating to such controversy" in the office of the clerk of the circuit court on or before its next term; and that "the controversy shall be tried anew in the circuit court at the first term, and be a preference case," the judgment to be certified to the municipal board which shall conform thereto. The appeal to the circuit court, as a "preference case," having been perfected, the bank in due time filed its petition and bond to remove the same to the District Court of the United States for this district, on the ground that it is "a suit of a civil nature, at law or in equity, arising under the Constitution and laws of the United States," and that the matter in controversy exceeds the value of $3,000, exclusive of interest and costs. The rate levied being 26 mills per annum upon a valuation of

$250,000, it is undisputed that the amount involved is sufficient for jurisdictional purposes, but is it a "suit" which "arises under the Constitution and laws of the United States," of which this court is given removal jurisdiction, is the compound question presented by the motion to remand made on behalf of the city.

■ Since the proceeding before the board of mayor and commissioners was administrative, the contention is made that it continues at least partly so upon appeal to the circuit court of the county, and that removal may not be had to the federal court of a tax proceeding which, though partly judicial, is essentially administrative in character; citing Upshur County v. Rich (1890), 135 U. S. 467, 10 S. Ct. 651, 34 L. Ed. 196; First National Bank v. Gildart (C. C. A. 1933) 64 F.(2d) 873, 874. In the former case, an appeal, under a state law, from an assessment of taxes to "a county court," which, in respect to such proceeding, acts not as a judicial body, but as a board of commissioners, without judicial powers, only authorized to determine questions of quantity, proportion, and value, was held not a "suit" which could be removed into a circuit court of the United States. The case was decided against removability because of lack of judicial powers in the county court under the laws of West Virginia, the county court in that state having no judicial powers, except in matters of probate. In all other matters it was an administrative board, charged with the management of county affairs. It was composed of three commissioners, two of whom constituted a quorum. At page 472 of 135 U. S., 10 S. Ct. 651, 653, the court said: "In our judgment it was not a suit within the meaning of the removal act, though approaching very near to the line of demarcation. We cannot believe that every assessment of property belonging to the citizen of another state can be removed into the federal courts. Certainly the original assessment made by the township or county assessors, could not be called a suit, and could not be thus removed; and there is, justly, no more reason for placing an assessment on appeal within that category. It is nothing but an assessment in either case, which is an administrative act. The fact that the board of appeal may swear witnesses does not make the proceeding a suit. Assessors are often empowered to do this without altering the character of their functions."

After referring to a number of decisions of the Supreme Court of Appeals of West Virginia, establishing "that the action and decision of a designated officer or board, whether the same be a court or other body, in reviewing and correcting an assessment of corporate or other property for taxation, are no more judicial acts than the acts of the officer or authority making the original assessment," because "the decision or finding of such officer or board, even if the same be a court or other judicial tribunal, is not such a judicial act or judgment as can be reviewed by a supreme or appellate court possessing judicial powers only," Mr. Justice Bradley stated at page 473 of 135 U. S., 10 S. Ct. 651, 653: "In these views we concur. At the same time we do not lose sight of the fact, presented by every day's experience, that the legality and constitutionality of taxes and assessments may be subjected to judicial examination in various ways,—by an action against the collecting officer, by a bill for injunction, by certiorari, and by other modes of proceeding. Then, indeed, a suit arises which may come within the cognizance of the federal courts, either by removal thereto, or by writ of error from this court, according to the nature and circumstances of the case. Even an appeal from an assessment, if referred to a court and jury, or merely to a court, to be proceeded in according to judicial methods, may become a suit within the act of congress. But the ordinary acts and doings of assessors, or of appellate boards of assessors, in passing upon matters of mere valuation, appraisement, or proportionate distribution of expense, belong to a different class of governmental functions, executive and administrative in their character, and not appertaining to the judicial department. If an illegal principle of valuation be adopted, or an unconstitutional assessment or tax be made or imposed, or fraud be practiced, it may be examined by one of the judicial methods referred to, and thus become the subject of a suit. The question, what is a 'suit,' in the sense of the judiciary laws of the United States, has been frequently considered by this court [particular reference being made to numerous authorities at page 474 of 135 U. S., 10 S. Ct. 651, 653]."

The First National Bank of Greenville v. Gildart, supra, was not an attempted removal of a tax proceeding but a bill in equity, in the federal District Court, to restrain such proceeding in the circuit court of the state to which it had been appealed by the bank from an order of the board of supervisors approving the assessment in question. The court, assuming general federal jurisdiction, because the suit arose out of a law of the United States, held that there was no equitable jurisdiction because the plaintiff had the remedy

at law to pay the tax and sue to recover it. Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447. It is true that, having decided there was no equitable jurisdiction, the court went on to discuss a question of equitable fitness or propriety, and stated that, on appeal to the circuit court, "the assessments had not become final, but were in process of settlement in the Mississippi courts in a proceeding which though partly judicial, was also essentially administrative in character," and concluded: "When administrative proceedings of this character are provided by a state, it is the duty of persons to avail themselves of them before applying to the federal court for relief;" citing Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150, and other cases which are distinguished by the Supreme Court in the later case of City Bank Farmers' Trust Co. v. Schnader (Jan. 8, 1934), 291 U. S. 24, 54 S. Ct. 259, 261, 78 L. Ed. 628, wherein the court said:

"Since the Dauphin county court is empowered, upon appeal from the action of the appraiser, to determine all questions, including both valuation and liability for the tax, the contention is made that its function is at least in part administrative, and a suit for injunction may not be entertained by a federal court prior to the decision of the state court. Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150; Porter v. Investors' Syndicate, 286 U. S. 461, 52 S. Ct. 617, 76 L. Ed. 1226. The statutes under consideration in those cases delegated legislative power of regulation to an administrative body and vested a revisory power in a court. As has repeatedly been held, the action of the court in such a matter is legislative rather than judicial, so that one who has not pursued the legislative process to a conclusion cannot turn to a court of equity for relief from a regulatory order which is not the final word of the constituted state authority. But other decisions make it clear that, while the action of the appraiser in a case like the present is purely administrative, the function of the court upon appeal is judicial in character, if, when the case is brought into the court, the commonwealth becomes plaintiff and the taxpayer defendant, and the action is tried as an ordinary action, resulting in a judgment which is final and binding on the parties, subject only to appeal to a higher state court, as permitted by the act. This renders the proceeding judicial, and gives it the character of a suit or action at law."

In Commissioners of Road District v. St. Louis S. W. Railroad Co., 257 U. S. 547, 42 S. Ct. 250, 253, 66 L. Ed. 364, the court upheld the removal to the federal court from a county court of Arkansas of a controversy over an assessment of benefits on particular lands, within a road improvement district, advertised for hearing in the state court, and on which the landowner was required by the state law to file his written objections. Chief Justice Taft said:

"An administrative proceeding transferred to a court usually becomes judicial, although not necessarily so. * * * The inquiry before the county court is a proceeding to declare and enforce a liability of lands and their owners as it stands on present and past facts under a law and rules already made by the Legislature and the administrative officers. * * * The county court, in hearing this controversy, was a judicial tribunal from the time the commissioners filed the book of assessments in its clerk's office and asked its confirmation. * * * But it is said that the state Supreme Court has held otherwise and that such a decision is binding on us. The question of removal under the federal statute is one for the consideration of the federal court. It is not concluded by the view of a state court as to what is a suit within the statute. Upshur County v. Rich, 135 U. S. 467, 477, 10 S. Ct. 651, 34 L. Ed. 196; Mason City & Ft. Dodge R. R. Co. v. Boynton, 204 U. S. 570, 27 S. Ct. 321, 51 L. Ed. 629; Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 25 S. Ct. 251, 49 L. Ed. 462. While the decision of the state court as to the nature of a proceeding under state statutes sought to be removed is, of course, very persuasive, it is not controlling, because involved in the application of a federal statute and the exercise of a federal constitutional right. The issue as to removal is akin to the question, which sometimes arises in enforcing the inhibition against state laws impairing the obligation of a contract, whether there is a contract under state law. This court decides that for itself. Northwestern University v. People of State of Illinois, 99 U. S. 309, 25 L. Ed. 387; Jefferson Branch Bank v. Skelly, 1 Black, 436, 17 L. Ed. 173; Bridge Proprietors v. Hoboken Co., 1 Wall. 116, 17 L. Ed. 571; Delmas v. Insurance Co., 14 Wall. 661, 20 L. Ed. 757.

"The decision of the Supreme Court of Arkansas, relied on, is Missouri Pacific R. R. Co. v. Izard County Improvement District No. 1, 143 Ark. 261, 220 S. W. 452, in which it was held that a proceeding like the one before us in the county court could not be removed to the federal court, because 'the duties which this statute devolves upon the county

court, as already stated, are administrative and not judicial, although the line of demarcation is very close.'

"The court further said:

" 'It will be observed that the power conferred by our statute upon the county court is not to determine whether there should be any assessment, but to equalize and adjust the assessment that has been made by the commissioners. There is nothing in the nature of an adversary proceeding, inter partes, in the assessment made by the commissioners and equalized and adjusted by the county court under the authority of the statute.'

"Our examination of the question leads us to a different conclusion. The book of assessments made by the assessors, as already noted, is presented by the commissioners of the district as an independent body, representing a fully equipped municipal corporation, capable of contracting, and of suing and being sued, to the county court. They are plaintiffs and petitioners, asking the court to give them a judgment confirming the assessments. The court's record in this case shows them present in person and by counsel, praying confirmation.

"The statute does not define how the hearing before the county court is to be conducted, except that the objections of the landowners are to be in writing, as the book of assessment is. These two documents make the pleadings. It is to be inferred, in the absence of any restriction, that oral evidence is to be heard on the issues raised by the objections, and that the commissioners in person or by attorney may take part in the hearing. Indeed, it was admitted by counsel at the hearing that this is the practice. The proceeding is said to be only equalization; but we have already seen that each lot is to be separately considered as to benefits and damages, on appeal. If so, why not on removal? We conclude that the proceeding is adversary and inter partes."

It is true, the court adverted to the difference "in their essential characteristics" of assessments for benefits and damages from those for general taxation, but it is thought that such difference disappears in a case where the sovereign has attached conditions to its exercise of the power to tax and has submitted to a court the judicial inquiry whether the conditions have been observed. As stated' in Mississippi & Rum River Boom Co. v. Patterson, 98 U. S. 403, 406, 25 L. Ed. 206; "If that inquiry take the form of a proceeding before the courts between parties,—the owners of the land on the one side, and the company seeking the appropriation on the other,

—there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the State." A fortiori, it is true, in the matter of an attempted assessment of a national bank, where the state has no power to tax except in the measure specifically granted by the federal government, and where in the exercise of its granted power the state has limited its administrative officers in the imposition of the tax, and has submitted to its courts, whose judgments are final and binding except on appeal, the judicial inquiry as to whether such limitations have been observed with respect to amount and liability. To deny removal in such circumstances is to deny a hearing in a federal court of original jurisdiction on the question of liability, because, whichever way the taxpayer turns, he will be confronted with either a plea of res adjudicata or of failure to exhaust his administrative remedy, and this is true even though, after exhausting his so-called administrative remedy in the state court, he pays the tax and sues at law to recover it. If it be said that he need not appeal to the circuit court, the concession involves an admission either that he need not exhaust his administrative remedy or that the remedy becomes judicial on appeal. There are similar cases from the Circuit Courts of Appeal and District Courts where removals have been upheld.

In re Stutsman County, N. D. (C. C. 1898) 88 F. 337, 340. This is a decision of District Judge Amidon, holding the proceeding for the collection of delinquent taxes in North Dakota to be a "suit" within the meaning of the removal acts of 1887 and 1888 (24 Stat. 552, 25 Stat. 433). He says a proceeding in a court of common law or equity which culminates in a judgment that conclusively determines a right or obligation of the parties, so that the same matter cannot be further litigated except by writ of error or appeal, is a suit within the meaning of the federal judiciary acts. In re City of Chicago (C. C.) 64 F. 897, is criticized as follows:

"It is true, as stated in the opinion in 64 F. 897, 899, that the power of taxation is, as to its source, legislative, and, as to its exercise, administrative; but the power of finally determining the validity of a tax is judicial. Before the property of a citizen can be taken, or conclusively charged with liability for a tax, he has the right to a judicial determination of two questions: First, whether the law authorizing the tax is a constitutional exercise of the legislative power; and, second, whether the administrative officers, in imposing the tax, have pursued the authority vested in

them by the statute. The determination of these questions by a judgment which can only be assailed by writ of error or appeal is judicial. It can make no difference whether such determination is made in the course of a proceeding by the county or municipality to levy or enforce the tax, or in a proceeding by the owner of the property to defeat it. A judgment which conclusively determines a right or obligation, so that the same matter cannot be further litigated, except by writ of error or appeal, is an exercise of judicial power; and a proceeding in a court of common law or equity, which culminates in such a judgment, is a 'suit,' within the meaning of the federal judiciary acts. Any other determination exalts matters of form above those of substance. Inasmuch, therefore, as the proceeding under the Illinois statute terminates in a judgment having this conclusive force, it would seem that it ought to be regarded as·a suit for the purpose of determining the jurisdiction of federal courts."

In re Mississippi River Power Co. (D. C. 1917) 241 F. 194, 197. In this case the city assessor of Keokuk, Iowa, listed and assessed property of the power company at $8,000,000, which the board of review of the city of Keokuk reduced to $5,000,000. From this action of the board the assessor appealed to the district court of Iowa. Thereupon the power company, a nonresident of the state, removed the case to the United States District Court. On motion to remand, the District Court held that the Legislature might have prescribed a method for assessment and collection of taxes without providing for a hearing before any court, but that it had not done so, and .that the trial by the state court on appeal was a judicial, and not a legislative, proceeding, and was a suit within the removal proceedings of the Judicial Code where there was diversity of citizenship and the requisite amount was involved. After stating that the assessment and levy of taxes is legislative in character, and quoting from Kelly v. Pittsburgh, 104 U. S. 78, 26 L. Ed. 658, to the effect that taxes in this country have not as a rule been collected by regular judicial proceedings, that the necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which in regard to taxation is and always has been due process of law, the court states that the Legislature had the power to prescribe a method of assessment, levy, and collection of taxes without providing for any hearing before a court, and that, because of this power, the contention was made that tax proceedings could not

be reviewed upon appeal from an administrative board to a judicial court. Judge Wade said:

"The Legislature of Iowa, in providing for an appeal to the district court, conferred upon that court either an administrative power or duty or a 'judicial power or duty.' I cannot assume that the Legislature enacted a law in conflict with the Constitution, or in excess of its legislative powers. I must, if possible, under the language used, construe the act as valid and constitutional.

"But, under the foregoing opinion of the Supreme Court of Iowa, it would not be valid if the Legislature undertook to confer upon the district court administrative powers or duties. It can only be held valid by assuming that the Legislature intended that the proceedings upon appeal would be judicial in their nature.

"It cannot be denied that the Legislature had the power to provide for a 'suit' before a court, in which the proceedings before the board of review might be retried. While it had the power to complete the assessment and levy the taxes without the intervention of a court, and without a judicial proceeding, it could without doubt waive this right, and as a matter of grace give to the property owner, or to the municipality, the right to a trial in court upon the issues considered by the board of review.

"The language of the statute clearly indicates that this was the purpose of the Legislature. It provides that:

"'The court shall hear the appeal in equity, and determine anew all questions arising before the board which relate to the liability of the property to assessment, or the amount thereof.' Code Supp. 1373.

"In construing the language of this statute, the Supreme Court of Iowa has specifically held, in the Matter of the Appeal of the Sioux City Stockyards Co., 149 Iowa, 5, 127 N. W. 1102, that this trial upon appeal is an exercise of judicial, and not of legislative, power.

"'On such appeal the court is to hear the matter in equity, and determine anew all questions arising before the taxing officer or tribunal which relate to the liability of the property to assessment or the amount thereof.' Schoonover v. Petcina, 126 Iowa, 261. 100 N. W. 490.

"'It is well settled in this state that the Legislature may provide for the exercise by a court of the power to judicially determine facts which are made the conditions on which authority may be exercised by officers to

whom it delegated the exercise of legislative and executive power.' Denny v. Des Moines County, 143 Iowa, 466, 121 N. W. 1066.

"The case before the district court upon appeal is not only to be tried as an equity proceeding, but the parties have the same right of appeal to the Supreme Court, and trial de novo in that court, as is allowed in any ordinary equity case. Farmers' Loan & Trust Co. v. Newton, 97 Iowa, 502, 66 N. W. 784. So that there cannot be any serious question but that the proceedings upon appeal are judicial in their character, and the only remaining question is whether or not such judicial proceedings constitute a 'suit' for removal purposes. Chief Justice Marshall, in Weston v. City of Charleston, 2 Pet. 464, 7 L. Ed. 481, said that:

" 'The term (suit) is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy * * * which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a suit.' "

Smith v. Douglas County, Nebraska (C. C. A. 1918) 254 F. 244, 245, is a decision by the Circuit Court of Appeals of the Eighth Circuit, upholding the right of removal to the federal court of a proceeding by a Nebraska county to assess inheritance taxes against real and personal property, as the property of a decedent, which another claimed as surviving joint-tenant. The removal was allowed when the proceeding reached the county court, because the tax proceeding, "at the time the petition for removal was filed, was a contest inter partes over property or the payment of money, before a judicial or quasi judicial body empowered to hear and determine the rights of the contestants." After citing Mississippi & R. River Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Hess v. Reynolds, 113 U. S. 73, 80, 5 S. Ct. 377; 28 L. Ed. 927; Pacific Removal Cases, 115 U. S. 1, 18, 5 S. Ct. 1113, 29 L. Ed. 319; Searl v. School-District No. 2, 124 U. S. 197, 199, 8 S. Ct. 460, 31 L. Ed. 415; Board of Commissioners of Delaware County v. Diebold Safe Co., 133 U. S. 473, 486, 10 S. Ct. 399, 33 L. Ed. 674; Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 25 S. Ct. 251, 49 L. Ed. 462, the court said:

"The tax involved the payment of money. The Constitution and statutes of Nebraska establish that this proceeding, when it reached the county court, became a contest inter partes, which that court, acting judicially, was empowered to hear and determine. The method prescribed of levying this tax is for a county judge to appoint an appraiser, who investigates values and reports to the judge. The judge then 'forthwith' fixes the value of the property and the amount of the tax, after which he 'immediately' gives notice thereof to all known interested parties. Any one dissatisfied with his finding may, within 60 days, appeal to the county court, upon filing bond covering costs and 'all taxes that may be fixed by the court.' * * * From the above sections, which are emphasized by other sections of the act, it is clear that the proceeding was ex parte until it reached the county court; that it became there a controversy inter partes; that the county court was given jurisdiction to hear and determine 'all questions in relation' to such taxes, not being confined to the accuracy of the amount assessed; that such action by the court was not merely administrative, but judicial. It should also be noted that county courts in Nebraska are a part of the judicial power of the state (Constitution of 1875, art. 6, § 1), courts of record with certain constitutional original jurisdiction, and such other jurisdiction as given by statute (Constitution of 1875, art. 6, § 16), with a prescribed judicial procedure."

It is interesting to note that this same court in the same tax proceeding, in 242 F. 894, 155 C. C. A. 482, had dismissed a bill to enjoin the county officials from collecting this inheritance tax. The court said: "That bill was dismissed for want of equity, because there was a remedy at law. The remedy there in mind was that given by section 10 of the act (Rev. St. Neb. 1913, § 6631), which gave a right to repayment of any such tax erroneously paid. It was not there decided that section 10 provided a remedy which was exclusive of other legal remedies or methods of challenging the validity of the tax."

In view of First National Bank of Greenville v. Gildart (5th C. C. A.), supra, this holding and language is peculiarly appropriate to the case at bar, and points the way, as well as the duty, to uphold removal while denying relief by an independent suit in equity.

Since the circuit court of the state may make such order as the administrative board should have made, it is argued that the function of the court is the same as the board's. This is a plain non sequitur, and does not prove either that both are boards or both are courts. It is not always true that an officer assumes the nature of the act performed. An assessor, in valuing property for taxation, is performing a judicial function (Judge Eth-

ridge, Knox v. L. N. Dantzler Lbr. Co., 148 Miss. 834, 114 So. 873, 877; Hagar v. Reclamation Dist. No. 108, 111 U. S. 710, note, 4 S. Ct. 663, 28 L. Ed. 569), but that does not make him a judge or a court. He remains an executive officer, and his act, while judicial in character, is administrative in effect. Yazoo & M. V. Railroad Co. v. Adams, 81 Miss. 90, 104, 105, 32 So. 937.

As there is no federal constitutional inhibition against the blending by the states of legislative, executive, and judicial functions, and since the name given to a court or board is not binding on the federal courts in matters of removal, it is often necessary to examine both the real nature of the act performed and the inherent quality of the body which performs it, in order to determine whether there is a suit or.justiciable controversy over which a federal District Court is capable of assuming jurisdiction. Such an examination of the Constitution, laws, and decisions of this state has disclosed nothing in the structural form, inherent qualities, or special statutory powers of the circuit court of Mississippi which derogates from its high dignity as a judicial court of original and general jurisdiction. In the first place, the fundamental law of this state has always separated the legislative, executive, and judicial powers. Its present Constitution has not only "confided each to a separate magistracy," (article 1, § 1) but has provided that no person belonging to one "shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments." Article 1, § 2. In the face of this mandate, a federal court ought not lightly to hold that such powers have been blended. By the same Constitution, it is provided that all courts shall be open and every person having an injury done him shall have a remedy by due course of law (section 24) ;. that the judicial power shall be vested in a Supreme Court and "such other courts as are provided for in this Constitution" (section 144) ; that a circuit court shall be held in each county at least twice a year (section 158) ; that "the circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law" (section 156).

By statute the circuit court of the state has original jurisdiction in all "actions and causes, matters and things arising under the constitution and laws of this state which are not exclusively cognizable in some other court." Code 1930, § 490. Also it exercises all the judicial "powers belonging to a court of oyer and terminer and general jail delivery, and may do and perform all other acts properly pertaining to a circuit court of law." Section 490, Code 1930. The provision in the Constitution (section 156) that the circuit court shall have such appellate jurisdiction as shall be prescribed by law plainly is limited by sections 1 and 2 of the same Constitution separating the powers of government, confiding each to a separate magistracy, and inhibiting any person belonging to one department from exercising the powers belonging to either of the others.

It is believed that a review of the decisions of the Supreme Court of Mississippi will not disclose a construction of the Constitution or laws of the state consistent with the theory that the powers conferred upon the circuit court in tax appeals from boards of supervisors and municipal authorities are essentially administrative. While the court has held that the circuit court on appeal may perform any act that the board of supervisors might have performed, its holding was simply tantamount to this, that on such an appeal the court might affirm, reverse, or modify any order complained of by the appellant, whether the taxpayer, state, county, or a municipality. There is no holding that the circuit court on appeal may list, value, or assess any person or thing where the assessment of such person or thing was not first made or refused to be made by the board from which the appeal was taken.

In Morris Ice Co. v. Adams (1898), 75 Miss. 410, 22 So. 944, on appeal from an order of the mayor and board of aldermen of Jackson, Miss., declining to approve an assessment of property which had escaped taxation, the circuit court not only approved the assessment, but rendered judgment against the property owner for the amount of taxes due. The Supreme Court upheld the assessment, but annulled the judgment in personam.

In Edward Hines Yellow Pine Trustees v. Knox (1926), 144 Miss. 560, 108 So. 907, in denying the injunction and dismissing the bill, the Supreme Court of Mississippi held that the complainants had a plain, adequate, and complete remedy at law because the state circuit court had the power, and it was its duty, to grant full relief.

In Knox v. Dantzler Lumber Co. (1928), 148 Miss. 834, 114 So. 873, there was an appeal by the Attorney General of Mississippi from an order of the board of supervisors approving an assessment for taxes. The court

held that the circuit court tried the issue de novo and might render such judgment as the board of supervisors should have rendered. At page 877 of 114 So., the court said: "It must be remembered that the valuation of property for assessment is a judicial act, and, while the Constitution creates the assessor, and he is required to list and value the property in the county for taxation, his act in so doing is not final, but is subject to review by proper tribunals created by law."

Harrison County v. Robertson (1920), 121 Miss. 387, 83 So. 617, 619. This was a suit by the state revenue agent against the First National Bank of Gulfport to recover delinquent taxes. It was dismissed because an appeal from the assessment by the board of supervisors was pending in the circuit court. The Supreme Court, referring to the tax appeal as a "suit," said "two suits should not be entertained at the same time, in the same court, between the same parties, and involving the same demand." Further, it said: "There was involved in this appeal, not only the liability of the bank for taxes, but the proper and lawful amount of the assessment. In disposing of such appeal the circuit court would necessarily adjudicate the definite liability of the bank, and ultimately fix the amount of the assessment, and consequently the amount of taxes to be paid. Our statutes thus furnish a statutory provision whereby the *courts* [italics supplied] may review upon their merits the decisions of the assessing officers and boards, and render such judgment as conforms to justice and equality. It is therefore, as between the county and the taxpayer, a suit involving the proper liability for taxes."

Elsewhere in the same opinion it speaks of the proceeding as "litigation to determine (the property owner's) ultimate liability for taxes," and says the judgment of the circuit court "is a final adjudication, binding upon both the taxpayer and the public. It is binding upon the state and the county. It is binding upon the tax collector. This final judgment settles the taxpayer's liability. It fixes the amount of this liability."

It seems unnecessary to pursue this phase of our inquiry further than to mention the two cases relied upon by the court in First National Bank of Greenville v. Gildart (C. C. A.) 64 F. (2d) 873, 874, in holding that sections 61, 62, 3179, and 3180 of the Mississippi Code of 1930 provided for a remedial review, "which though partly judicial, was also essentially administrative in character," viz., Board of Supervisors of Lauderdale County v. Citizens' National Bank, 119 Miss. 165, 80

So. 530; Capital National Bank v. City of Jackson, 162 Miss. 658, 139 So. 163. It is thought, with deference, that neither of these cases sustains the proposition that a tax proceeding on appeal to the circuit court is essentially administrative in character. So clearly does this appear from a consideration of the text that probably they were cited to sustain merely the sentence immediately preceding the reference to them: "In those proceedings plaintiff may present every question which it now seeks to litigate, advance every federal right which it now asserts." If so, there is no occasion here to dispute the proposition; on the contrary, that is the argument of the removing defendant, and the holding of the other Mississippi decisions previously referred to herein; but at the same time it leaves the assertion that a tax proceeding on appeal in the circuit court is essentially administrative without any authority to support it.

The suggestion is made that, by appeal to the circuit court from the order of the board of mayor and commissioners, the Hattiesburg Bank has chosen its forum and waived any right to remove which it otherwise might have. This question was adverted to in Chicago, etc., Railway Co. v. Drainage District No. 8 (D. C. 1917) 253 F. 491, 498, where the right of removal of a tax proceeding, involving solely the amount of taxes the property should bear, was upheld. After calling attention to the fact that the taxpayer had not voluntarily appeared in the state court when it had a choice of forum, because, although a nonresident, it could not have gone directly into a court of the United States, as no such right had been given, the court said:

"I have looked carefully, and find that the courts have given little consideration to the question here involved. But it is my judgment that, when Congress limited the right of removal to the 'defendant,' it based such limitation upon the theory that a party, resident or nonresident, who voluntarily appeared in a state court when he had a choice of jurisdictions, should not be permitted to ask for a transfer of his case out of that court, and if the railway company in this case, being a nonresident, could have gone directly into the United States Court, as it could in any ordinary action against a resident of Iowa, then, of course, it would be estopped from asking removal herein, because it had voluntarily chosen its forum; but the right conferred by the Legislature gave it no such power. It proceeded in the only way authorized by the Legislature. There was no 'suit' possible until it had perfected its appeal, but instantly

the appeal was perfected, there was a 'suit,' and in the spirit of the law, I believe that it ought to have, and I believe that it has, the right to remove the case for trial.

"If the Legislature of Iowa had enacted that, after the determination by the board of supervisors of the amount of the tax, any property owner would have the right, by proceeding in a court of competent jurisdiction, to have the proceedings reviewed in an action in equity, the railway company certainly could have brought its proceeding in this court. The Legislature in effect did grant the property owners this very thing—a trial de novo in an equity proceeding in a court of competent jurisdiction. It could not, by designating the procedure for getting into court an 'appeal,' destroy the right which Congress gave to the plaintiff, a nonresident of the state, to have its case tried in the United States court." N. B. The same is true in Mississippi: Edward Hines, etc. v. Knox, 144 Miss. 560, 108 So. 907; Reed v. Lbr. Co., 149 Miss. 395, 115 So. 724.

Condemnation cases are numerous where the defendant, after appealing to a state court from the decision of an appraiser or an administrative board, has removed the case to the federal court. In Mason City R. R. Co. v. Boynton (1907), 204 U. S. 570, 27 S. Ct. 321, 51 L. Ed. 629, the landowner appealed from the commissioner's award, and then, in due time, filed a petition for the removal of the cause into the Circuit Court of the United States on the ground of diversity of citizenship. In his petition and bond to secure such removal, the owner referred to himself as the defendant and to the railroad company as the plaintiff in the case. The removal was sustained. For other cases, where removal was upheld, citing numerous authorities, see: Madisonville Traction Co. v. Mining Co. (1905), 196 U. S. 239, 25 S. Ct. 251, 49 L. Ed. 462; and Board of Commissioners of Delaware County v. Diebold Safe & Lock Co. (1890), 133 U. S. 473, 10 S. Ct. 399, 33 L. Ed. 674. The latter was not a condemnation proceeding, but was a suit against Delaware county on a contract for work upon the county jail. The assignee of the contractors commenced the suit by a claim filed with the county auditor and by him presented to the board of county commissioners, in accordance with the Revised Statutes of Indiana. The board disallowed the claim. The plaintiff appealed to the circuit court of the county; and, immediately after the entry of the appeal in that court, removed the case to the Circuit Court of the United States on the grounds of diversity of citizenship and local prejudice. A

motion to remand was overruled, and the case heard and decided upon the merits. On appeal, although on the merits the judgment of the lower court was reversed and a new trial ordered because of errors in instructions to the jury, the court upheld the ruling of the lower court on the motion to remand. Upon this subject, the Supreme Court said (133 U. S. 486, 10 S. Ct. 399, 403):

"It was also objected that the petition for removal was filed too late after the case had been tried and determined by the board of county commissioners. But, under the statutes of Indiana then in force, although the proceedings of county commissioners, in passing upon claims against a county, are in some respects assimilated to proceedings before a court, and their decision, if not appealed from, cannot be collaterally drawn in question, yet these proceedings are in the nature, not of a trial inter partes, but of an allowance or disallowance, by officers representing the county, of a claim against it. At the hearing before the commissioners, there is no representative of the county, except the commissioners themselves. They may allow the claim, either upon evidence introduced by the plaintiff, or without other proof than their own knowledge of the truth of the claim; and an appeal from their decision is tried and determined by the circuit court of the county as an original cause, and upon the complaint filed before the commissioners. Rev. St. Ind. §§ 5758–5761, 5777; State v. Washington Commissioners, 101 Ind. 69; Orange Commissioners v. Ritter, 90 Ind. 362, 368. It follows, according to the decisions of this court in analogous cases, that the trial in the circuit court of the county was 'the trial' of the case, at any time before which it might be removed into the circuit court of the United States, under clause 3, § 639, of the Revised Statutes. Mississippi & R. River Boom Co. v. Patterson, 98 U. S. 403 [25 L. Ed. 206]; Hess v. Reynolds, 113 U. S. 73, 5 S. Ct. 377 [28 L. Ed. 927]; Union Pacific Railway Co. v. Kansas City, 115 U. S. 1, 18, 5 S. Ct. 1113 [29 L. Ed. 319]; Searl v. School-District, 124 U. S. 197, 199, 8 S. Ct. 460 [31 L. Ed. 415]."

In résumé, let us examine the scope and character of this proceeding, with particular respect to its component parts, to ascertain wherein it is judicial in character and to what extent, if any, it is essentially administrative. We have noted the incompatibility of separate functions under the Mississippi Constitution. We have seen that, at the time the petition for removal was filed, the tax appeal was pending in the circuit court of the state, a judicial tribunal of high dignity and broad

original jurisdiction, with such appellate jurisdiction as may be prescribed by law, subject only to the constitutional limitation that no legislative or executive powers may be conferred upon it. We have noted that the power of taxation is legislative and cannot be exercised otherwise than under the authority of the Legislature (Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197); that there is a distinction between a tax which calls for no inquiry in the nature of a judicial examination before collection, such as poll taxes, license taxes (not dependent upon the extent of the business), and other specific taxes on persons, things, or occupations, and a tax imposed upon property according to its value, to be ascertained by assessors upon evidence. In the former no notice to the owner is required. In the latter executive officers list the property for taxation, but in estimating the value they act judicially. The constitutional provision as to due process of law requires that the party to be affected shall have notice and an opportunity to be heard; but the proceeding is less formal than in ordinary judicial hearings, because the necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice. Ordinarily, an appeal from acts of the assessors is not given directly to the courts; the process of revising and equalizing assessments being committed to administrative boards, as, in this instance, to the board of mayor and commissioners of the city of Hattiesburg, who in the performance of their quasi judicial functions must give the property owner notice and an opportunity to present objections, which fulfills the requirements of due process in matters of taxation; such proceedings being construed "with the utmost liberality." Turpin v. Lemon, 187 U. S. 57, 58, 23 S. Ct. 20, 47 L. Ed. 70. "In some states, instead of a board of revision or equalization, the assessment may be revised by proceedings in the courts and be there corrected if erroneous, or set aside if invalid; or objections to the validity or amount of the assessment may be taken when the attempt is made to enforce it. In such cases all the opportunity is given to the tax-payer to be heard respecting the assessment which can be deemed essential to render the proceedings due process of law." Hagar v. Reclamation District, 111 U. S. 701, 711, 4 S. Ct. 663, 668, 28 L. Ed. 569. We have found that the requirements of due process are met if a hearing is afforded the taxpayer either before the courts or before executive officers or an administrative board, and that a hearing before both is not required,

though it may be vouchsafed. We have observed in this case that the Mississippi statutes not only grant a hearing before an administrative board, but allow an appeal by any person "feeling aggrieved by the decision" of such board to the circuit court where the "controversy shall be tried anew" and be "a preference case," which shall involve "not only the liability of the bank for taxes, but the proper and lawful amount of the assessment"; that "in disposing of such appeal the circuit court" necessarily adjudicates "the definite liability of the bank"; that "our statutes thus furnish a statutory provision whereby the courts may review upon their merits the decisions of the assessing officers and boards, and render such judgment as conforms to justice and equality"; and that it is a "suit involving the proper liability for taxes," which cannot be collaterally attacked and cannot be reviewed except on appeal to the Supreme Court of Mississippi, possessing only appellate judicial powers.

Descending to a more minute examination of the processes to be performed by the circuit court in the case at bar, and by a system of exclusion and inclusion reviewing the entire sovereign process (legislative, executive, and judicial) in the assessment of property for ad valorem taxes, we find that the court is not asked to authorize a tax upon the shares or surplus of the bank. That authority is derived from a federal act and a state statute, both of which, under our dual form of government, are necessary to tax the property of a national bank. The court is not asked to levy the tax; such levy has been made by the municipal board, as agent of the state, and in making such levy it performed a purely legislative function. It is not asked to list the property for taxation upon the assessment rolls; that duty was performed by the city assessor, an executive officer, at the request in this instance of a state tax collector, also an executive officer. The only other function necessarily performed to complete the process was to value the property, which likewise was done by the assessor at the instance of the state tax collector. This, as we have seen, was a judicial function performed from time immemorial in this country and in England by executive officers. The board of mayor and commissioners performed quasi judicial functions in approving the action of the assessors, after a hearing given the bank following notice of the listing and valuation of its property for taxation. On appeal, the circuit court is called upon to adjudicate the liability of the property for taxes and the correct valuation of the same, both

of which are judicial questions. It performs no legislative or executive function, and the proceeding is wholly judicial. I crave indulgence for prolixity on this branch of the case, but the deference due the Court of Appeals and the diffidence felt in attempting to distinguish the case of First National Bank v. Gildart (5 C. C. A. 1933) 64 F.(2d) 873, are, I hope, sufficient justification.

The remaining question is whether this is a suit "arising under the Constitution and laws of the United States." That depends upon whether the city necessarily relies upon section 5219 of the Revised Statutes of the United States with amendments thereto (12 USCA § 548), as well as upon section 3138, Miss. Code of 1930, for authority to make the assessment. If so, there is a federal question which arises on the plaintiff's statement of its case; but, if the city may properly state its case without invoking the authority of said federal statute or may properly allege facts from which its right to make the assessment may be inferred as a matter of law, without reference to said federal statute, then there is no federal question which necessarily appears from the plaintiff's own pleading. In other words, there is no dispute that there is a federal question in this case, but the contention of the city is that such a question arises only as a matter of defense or as anticipatory of a defense.

In Owensboro National Bank v. Owensboro (1899), 173 U. S. 664, 19 S. Ct. 537, 538, 43 L. Ed. 850, upon writ of error to the Court of Appeals of the State of Kentucky, it was held that a state is wholly without power to levy any tax, direct or indirect, upon national banks, their property, assets, or franchises, except when permitted to do so by legislation of Congress; that section 5219 of the Revised Statutes was the measure of the power of states to tax national banks; and that the tax, having been assessed on the franchise or intangible property of the corporation, was not within the purview of the authority conferred by the act of Congress, and was therefore illegal. In its opinion the court speaks of said section 5219 as a grant of power to the states, and says that any tax not in conformity to it is void. In undertaking to determine the validity of the Kentucky statutes, which sought to tax the franchises of national banks, the court analyzed the questions presented thus:

"Were the taxes complained of levied upon the bank, its property, or franchise, and, if so, were they legal? is the question which, then, arises on the threshold of the case."

"Two elements are involved in the determination of this question; that is, the extent of the power of the respective states to tax national banks, and the ascertainment of the scope and purport of the law by which the taxes complained of were levied.

"Early in the history of this government, in cases affecting the Bank of the United States, it was held that an agency, such as that bank was adjudged to be, created for carrying into effect national powers granted by the constitution, was not, in its capital, franchises, and operations, subject to the taxing powers of a state. McCulloch v. Maryland, 4 Wheat. 316 [4 L. Ed. 579]; Osborn v. Bank of the United States, 9 Wheat. 738 [6 L. Ed. 204]."

The court stated that the first act providing for the organization of national banks contained no "grant" of power to the states to tax national banks in any form whatever, but the following year the power was "granted" to tax the shares of stock in the name of the stockholders.

■ It follows that in a proper proceeding to tax the shares or surplus of a national bank a state must rely, first, upon the act of Congress which is the measure of its power, and, second, upon its own legislation which has been enacted in conformity thereto. In this case, it must be concluded from the assessment roll, which is the plaintiff's pleading, that it is attempting to tax the bank in reliance upon the federal statute conferring the right in measured terms so to do. As stated by Chief Justice Taft in the Arkansas Road District Case, 257 U. S. 547, 42 S. Ct. 250, 254, 66 L. Ed. 364, the city of Hattiesburg is plaintiff, "asking the court to give (it) a judgment confirming the assessments." The book of assessment and the objections of the taxpayer "make the pleadings." The proceedings are in invitum; the bank is the defendant. From the assessment roll it appears inescapably that the assessment is against a national bank, and from that fact the court takes judicial knowledge that it is a fiscal agency of the United States government which the city is without power to tax except by special grant, and therefore concludes as a matter of law that the city is relying upon the federal statute to sustain its right to make the assessment.

■ In matters of removal, the federal courts are not bound by the rules of pleading under state procedure in ascertaining what constitutes a case involving a federal question. Even the abolition of written

pleadings and a return to pleadings ore tenus, as at ancient common law, could not take away the right of removal to a federal court under the Constitution and laws of the United States. Regardless of state practice or procedure, the question, which the federal courts must determine for themselves, is whether the plaintiff asserts a right, the correct decision of which, without anticipating defenses, depends wholly or in part upon the application or construction of the Constitution or laws of the United States. Mere references or absence of references to a federal statute are not conclusive; but it is sufficient if from the facts alleged it clearly appears, or reasonably follows as a conclusion of law, that a federal law is necessarily relied upon in good faith by the plaintiff as an essential or integral part of his case.

No point has been made by counsel that the effort is to assess the surplus and not the shares of the bank, and that, as the grant of power to the state Legislature to determine and direct the manner and place of taxing "all shares of national banking associations" does not mention surplus, the effort is not within the grant, and no claim that it is may fairly be attributed to the plaintiff in any proper statement of the law and the facts relied upon to sustain the assessment; but, as it is required to do in order to determine its own jurisdiction, the court has raised this question for itself, and has discarded it, after concluding that it is not so unreasonable to attribute to the plaintiff such an attitude as it would be for the plaintiff to attempt to tax the surplus of a federal agency without any federal authority whatever. Moreover the value of the surplus helps to make the value of the shares; to tax the former is in part to tax the latter; and, if an amendment of pleadings is necessary fairly to present the issue, the Mississippi practice provides for liberality in allowing it. Section 567, Code 1930.

It may also be observed that federal jurisdiction is not defeated because the federal issue should be decided against the plaintiff, provided the federal question is a substantial one, in essence and effect, and is asserted in good faith. No claim is made, or fairly may be made, by the plaintiff on this motion to remand that its right to tax the surplus of a national bank is colorless, formal, or insubstantial under the federal statutes, nor could it well do so, such a claim being tantamount to an admission that the right did not exist; but, on the contrary, the plaintiff is vigorous-ly asserting such right, which necessarily is claimed to arise out of the grant by Congress to the Legislature of this state.

Therefore the conclusion is that the right to assess the bank's surplus is claimed by the city, in good faith, to be granted by both the federal and state statutes, the latter depending upon the former for its validity; and that, since the tax proceeding on appeal to the circuit court is justiciable, i. e., a proceeding wholly judicial in character and proper to be brought before, and decided by, a judicial court, this is a suit arising substantially out of a law of the United States which is removable under section 28 of the Judicial Code (28 USCA § 71). The motion to remand should be overruled. An order may be entered accordingly.